UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------X

JACQUELYN MUSIELLO,    :

           :   Civil Action No.: 20 Civ. 2569 (PAE)

     Plaintiff,   :

           :

    vs.     :

           :

CBS CORPORATION, et al.,   :

           :

     Defendants.  :

-----------------------------------------------------X

# PLAINTIFF'S MEMORANDUM OF LAW
# IN SUPPORT OF MOTION TO REMAND

THE CLANCY LAW FIRM, P.C.
Donna H. Clancy, Esq.
40 Wall Street, 61st Floor
New York, New York 10005
(212) 747-1744

*Attorneys for Plaintiff*

This Memorandum of Law is submitted on behalf of Plaintiff, in support of her motion to remand this matter to the Supreme Court of New York, Bronx County.

## PRELIMINARY STATEMENT

This action was removed from state court as a putative class action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Removal under the Act is subject to various requirements, including that the putative class members number at least 100. This is the requirement presently at issue. Defendants claim that Plaintiff alleged that "all" their employees were similarly subjected to the gender discrimination she endured in the course of her employment, and, since more than 100 females were employed during the relevant class period, the action is removable. In fact, Plaintiff does not state in her Complaint that "all" employees were similarly situated or, indeed, anywhere estimate their number. Since her employment ended a few days after the class period began, any estimate of that number at this juncture would be pure conjecture and cannot possibly support removal.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1.     Allegations in Plaintiff's Complaint

Plaintiff alleges that she was employed by Defendants CBS Corporation, CBS Radio Inc., CBS Sports Radio Network Inc., and Entercom Communications Corp. (the "CBS Defendants") as a human resources manager and payroll specialist from April 2013 to February 17, 2017 (having been hired as a staff accountant in December 2012). *See* Complaint (Exhibit A to Clancy Decl.), ¶¶ 11-13. She worked in the Human

Resources Department of CBS Radio, located at 345 Hudson Street in Manhattan, where she reported to Director of Human Resources, Defendant Margaret Marion. *Id.*

Plaintiff refers to former CBS Chairman and CEO Leslie Moonves, and details how he was forced to resign in 2018 after multiple women came forward accusing him of sexual misconduct for over two decades at CBS. *Id.*, pp. 21-24.[1] However, Plaintiff alleges, this misconduct was not limited to Moonves; the CBS Defendants harbored a "top down sexist culture [that] was blatantly hostile to women and fostered and condoned a sexually denigrating work environment for its female employees for more than a decade." *Id.*, p. 24. Plaintiff specifically alleges that her "male supervisors and coworkers, including, and in particular, sales team, radio personalities, department heads and management level employees, subjected female coworkers to sexual comments, outrageous sexual solicitations, unwelcome touching, innuendoes and hostility on a nearly daily basis," and that she herself "was subject to CBS's corporate culture of permitting various forms of sex discrimination and sexual harassment in the form of sexual comments, innuendos, jokes and inappropriate touching from Defendants' male employees." *Id.*, pp. 31-32.

In particular, Plaintiff alleges that Defendant Dan Taylor, a CBS "on air radio personality, began flirting with her," and "propositioned [her] for lunch at PJ Charlton," having told her that "he knew she was up for a promotion, and, "that it would be in her best interest" to go because [CBS] COO Scott Herman would be there

---

[1] Because of a formatting issue that resulted in erroneously numbered paragraphs within the Complaint, citation is instead by page number.

as well." *Id.*, p. 32.  Defendant Taylor also "gifted Plaintiff chocolates, flowers, and sent her a handwritten card." *Id.*, p. 33.  His "advances made Plaintiff feel extremely uncomfortable, demeaned and disrespected," yet he persisted despite her rebuffs and refusal to go to lunch with him. *Id.*  During this time, Plaintiff "received complaints from other female employees that [Taylor] was making sexual advances towards them as well, including soliciting them to join him in his private plane." *Id.*  Four female employees who suffered harassment are identified by their initials: "D.G.," "J.D," "J.L.," and "D.R." *Id.*  As a HR manager, Plaintiff also "address[ed] complaints from female employees concerning inappropriate sexual advances of other male executives, for example, COO Herman and Marc Rayfield [who was transferred from CBS Radio in Philadelphia after being accused in a prior lawsuit of sexual harassment whilst employed there]." *Id.*, p. 34.  Also during Plaintiff's employment, "various employees complained of sexual harassment, and/or racism and/or bigotry by CBS Supervisor, Frank Iemmiti." *Id.*, p. 35.

In December 2015, Plaintiff alleges that, having injured her foot and been advised that surgery was necessary, her request for medical leave "under CBS's leave policies" was denied. *Id.*, p. 36.  She was forced to wait almost an entire year before her request was finally approved, because of which her medical condition worsened, requiring multiple surgeries. *Id.*, pp. 36-37.  As a result of the "sexist discriminatory hostile work environment" she had endured, and the "resulting emotional distress and health issues she suffered [including a miscarriage], Plaintiff was unable to return to

Defendant CBS' employment following her medical leave." *Id.*, p. 37.  Her employment ended on February 17, 2017. *Id.*

Plaintiff filed the present action on February 14, 2020.  Three purported class-wide claims on behalf of herself and other similarly situated female employees are asserted: (1) hostile work environment sex discrimination under the New York State and City Human Rights Laws, respectively, (3) disparate treatment sex discrimination, including by reason of the CBS Defendants' failure to investigate complaints by female employees and retaliation, and (4) disparate impact sex discrimination. *Id.*, p. 37. Plaintiff also asserts three individual claims: (2) quid pro quo sexual harassment in relation to the conduct of Defendant Taylor, (5) retaliation under the New York State and City Human Rights Laws, and (6) retaliation under the New York State Labor Law.

## 2.    Notice of Removal

Defendants (other than Defendant Taylor) filed a Notice of Removal (Dkt. 1) on March 25, 2020.  According to the Notice, this Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act, as a putative class action in which *inter alia* the number of members of all proposed plaintiff classes in the aggregate is at least 100.

Defendants define the putative class period as February 18, 2017 through the conclusion of the action on the basis that the Complaint was filed on February 18, 2020 (in fact it was filed on February 14, 2020). *See* Notice, ¶ 9.  With regard to the number of putative class members, "Defendants do not concede, and specifically deny, Plaintiff's allegations that any individuals are similarly situated to Plaintiff and that this

lawsuit is or may proceed as a class action." *Id.*, ¶ 9 fn. 1.  However, they claim that Plaintiff specified "all" female employees, as similarly situated to her, in paragraphs 3 and 5, respectively, of her Complaint. *See* Notice, ¶ 28 ("The Complaint alleges claims on behalf of Plaintiff and a putative class consisting of all "female employees" of Defendants.")

To quantify "all" employees, Defendants rely upon a declaration from Michael E. Dash, Jr., an "Executive Vice President, Administration and Compliance and Deputy General Counsel for Defendant Entercom Communications Corp. ("Entercom")." *See* Dash Decl. (Dkt. 2), ¶ 1.  Mr. Dash explains that Defendant CBS Radio Inc. was formerly a wholly-owned subsidiary of Defendant CBS Corporation; that, in November 2017, it became a wholly-owned subsidiary of Entercom; and that, "[a]ccording to Entercom's human resources records as kept in the ordinary course of business, there are over 100 female employees who worked in New York City for CBS Radio and/or Entercom between February 18, 2017 and the present." *Id.*, ¶¶ 4, 9.

### 3.    Request for HR Data

In his Declaration, Mr. Dash further states that he "reviewed human resources data containing current and/or last known addresses of female employees as kept in the ordinary course of business by Entercom," and that "[a]ccording to such data, for the female employees who worked for CBS Radio and/or Entercom in New York City between February 18, 2017 and the present, there are individuals whose last known addresses are outside of New York, New Jersey, Connecticut, Pennsylvania and

Delaware, including, but not limited to, last known addresses in Alabama, Colorado, Florida, Illinois, Maryland, Massachusetts, Texas, and Vermont." *Id.*, ¶ 10.

On April 22, 2020, counsel for the Plaintiff requested a copy of this data from counsel for the Defendants, informing opposing counsel that the employees' names could be redacted, and expressing the expectation that, since the records had already been collated and reviewed for purposes of removal, production could be accomplished in a short time frame. *See* Clancy Decl.), ¶¶ 4-5. Opposing counsel responded shortly afterwards that she and her colleagues would "discuss with our clients and get back to you." *Id.*, ¶ 5. However, after a series of follow-up emails, opposing counsel responded a short time ago today that they "haven't had a chance to connect with [their] clients." *Id.*, ¶ 6.

## LEGAL STANDARDS

In 2005, the Class Action Fairness Act ("CAFA") amended the diversity statute, 28 U.S.C. § 1332. "by adding a new § 1332(d) to confer original federal jurisdiction over any class action involving (1) 100 or more class members, (2) an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (3) minimal diversity, i.e., where at least one plaintiff and one defendant are citizens of different states." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006) (citing 28 U.S.C. § 1332(d)(2), (5)(b), (6)). The party asserting subject matter jurisdiction must demonstrate a "reasonable probability" that CAFA's jurisdictional requirements are satisfied. *Id.* at 58. Where "jurisdictional facts are challenged, the party asserting jurisdiction must support those facts with "competent proof" and "justify [its]

allegations by a preponderance of evidence." *United Food & Commercial Workers Union v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994) (quoting *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936)).

There are several exceptions to the federal jurisdiction conferred by CAFA, 28 U.S.C. § 1332(d)(3)-(4). The party seeking remand bears the burden of proving that an exception is applicable. *Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 26 (2d Cir. 2010).

Under the "home state" exception, a district court must decline to exercise jurisdiction over a class action in which two-thirds or more of the putative class members, and the primary defendants, are citizens of the state in which the action was originally filed. 28 U.S.C. § 1332(d)(4)(B). Under the "local controversy" exception, a district court must also decline to exercise jurisdiction if "(1) more than two-thirds of the class members are New York citizens; (2) at least one key defendant is a New York citizen; (3) the alleged conduct causing injury occurred in New York; and (4) no other class action has been filed asserting similar factual allegations against any of the defendants on behalf of the same or other persons during the three-year period preceding the filing of this case." *Hart v. Rick's NY Cabaret Intern., Inc.*, 967 F.Supp.2d 955, 963 (S.D.N.Y. 2014); *see* 28 U.S.C. § 1332(d)(4)(A). Finally, a district court "may, in the interests of justice and looking at the totality of the circumstances," decline to exercise jurisdiction over a class action in which greater than one-third but less than two-thirds of the putative class members, and the primary defendants, are citizens of

the state in which the action was originally filed, based upon consideration of certain enumerated factors. 28 U.S.C. § 1332(d)(3).

## **ARGUMENT**

**1.      The putative class members do not number at least 100**

In her Complaint, Plaintiff has alleged that she was the victim of gender discrimination in the course of her employment, along with other similarly situated female employees.    According to the removing Defendants, Plaintiff alleges in paragraphs 3 and 5 of the Complaint that "all" of their female employees were similarly situated, and, since more than 100 females were employed during the relevant class period, the action is removable.  While Plaintiff alleges that she was one victim amongst others of pervasive and widespread discrimination during the period of her employment, in the form of a hostile work environment and sexual harassment, she does not estimate how many other female employees were victimized.  She certainly does not state in her Complaint, either in paragraphs 3 and 5 or anywhere else, that "all" female employees are putative class members.  Instead, she names four alleged perpetrators, and less than ten victims.  However, since Plaintiff's employment ended only a few days after the relevant class period began, it is unknown if any potential claims by these named victims would fall within that period, the continuing violation doctrine notwithstanding.  Any estimate as to the number of similarly situated employees within the class period is pure conjecture.  Not only that, Defendants' notice of removal does not even rise to the level of conjecture, since it is based on the

misrepresentation that Plaintiff specifies "all" employees as similarly situated in her Complaint.

<u>CONCLUSION</u>

For the foregoing reason, this action should be remanded to the Supreme Court of New York, Bronx County.  Furthermore, since Defendants have yet to produce the HR data on which removal is purportedly based, Plaintiff reserves the right to supplement this motion by reference to one or more of the above-specified CAFA exceptions once the data is produced.

Dated: New York, New York
      April 24, 2020

Respectfully submitted,

<u>s/Donna H. Clancy</u>
Donna H. Clancy, Esq.
The Clancy Law Firm, P.C.
40 Wall Street, 61st Floor
New York, New York 10005
(T) 212-747-1744