**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JACQUELYN MUSIELLO and other employees
similarly situated,

        Plaintiff,

    vs.

CBS CORPORATION, CBS RADIO INC., CBS
SPORTS RADIO NETWORK INC.,
ENTERCOM COMMUNICATIONS CORP.,
DAN TAYLOR, MARGARET MARION, ABC
CORPORATIONS "1-5" and JOHN DOES "1-
10",

        Defendants.

Case No. 1:20-cv-02569-PAE

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT CBS CORPORATION'S MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

MORGAN, LEWIS & BOCKIUS LLP

Michael L. Banks (*admitted pro hac vice*)
W. John Lee *(admitted pro hac)*
1701 Market Street
Philadelphia, PA 19103
Tel.: (215) 963-5000
Fax: (215) 963-5001
Michael.Banks@morganlewis.com
W.John.Lee@morganlewis.com

Chelsea L. Conanan
Liliya P. Kramer
101 Park Avenue
New York, NY 10178-0060
Tel.:  (212) 309-6000
Fax:  (212) 309-6001
Chelsea.Conanan@morganlewis.com
Liliya.Kramer@morganlewis.com

*Attorneys for Defendant CBS Corporation*

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     SUMMARY OF ALLEGED FACTS ................................................................. 5

        A.      The Relevant Parties. ............................................................................. 5

                1.      Plaintiff Jacquelyn Musiello. ..................................................... 5

                2.      CBS Corporation. ........................................................................ 7

                        a.      CBS Corporation's Radio Business Spin-Off And CBS
                                Radio Inc.'s Subsequent Merger With Entercom. ......... 8

        B.      Plaintiff's Vague And Generalized Allegations Of A "Top Down
                Workplace Culture Of Gender Bias And Sex Discrimination." ........... 9

        C.      Plaintiff Fails To Return To Work At CBS Radio Inc. ...................... 12

III.    LEGAL STANDARD ...................................................................................... 12

IV.     ARGUMENT ................................................................................................... 14

        A.      Plaintiff Fails To Sufficiently Allege That CBS Corporation Was Her
                "Employer." ......................................................................................... 14

                1.      Plaintiff Fails To Sufficiently Allege That CBS Corporation And
                        CBS Radio Inc. Were A "Single" or "Joint" Employers. ...... 14

                2.      Plaintiff's Admissions In The FAC Further Demonstrate That She
                        Was Employed Exclusively By CBS Radio Inc. ...................... 19

                3.      Plaintiff's Allegations Regarding CBS Corporation's Employment
                        Policies Fail To Sufficiently Allege Any Single Or Joint Employer
                        Relationship With CBS Radio Inc. .......................................... 21

                4.      The Remaining FAC Allegations Similarly Do Not Show Control
                        By CBS Corporation. ............................................................... 23

        B.      NYSHRL And NYCHRL Claims Prior To February 14, 2017 Are
                Untimely. ............................................................................................. 25

V.      CONCLUSION ............................................................................................... 26

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Amaranth Nat. Gas Commodities Litig.*,
   587 F. Supp. 2d 513 (S.D.N.Y. 2008), *aff'd*, 730 F.3d 170 (2d Cir. 2013) ...........................20

*Anderson v. City of New York, Health & Hosp. Corp.*,
   No. 16-1051, 2017 WL 9538862 (S.D.N.Y. Jan. 19, 2017), *report and
   recommendation adopted sub nom.*, 2017 WL 3251603 (S.D.N.Y. July 31,
   2017) .......................................................................................................................................26

*Ashcraft v. Iqbal*,
   556 U.S. 662 (2009).....................................................................................................13, 19, 21

*Balut v. Loral Elec. Sys.*,
   988 F. Supp. 339 (S.D.N.Y. 1997) ................................................................................15, 23

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).....................................................................................................12, 13, 25

*Benzinger v. Lukoil Pan Ams., LLC*,
   No. 16-8533, 2020 WL 1322478 (S.D.N.Y. Mar. 20, 2020) (Engelmayer, J.) ......................23

*Bravo v. Eastpoint Int'l, Inc.*,
   No. 99- 9474, 2001 WL 314622 (S.D.N.Y. Mar. 30, 2001)...................................................17

*DiFolco v. MSNBC Cable LLC*,
   622 F.3d 104 (2d Cir. 2010)...................................................................................................13

*Fattoruso v. Hilton Grand Vacations Co., LLC*,
   873 F. Supp. 2d 569 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 26 (2d Cir. 2013) .......................24

*Fenner v. News Corp.*,
   No. 09-9832, 2013 WL 6244156 (S.D.N.Y. Dec. 2, 2013) ........................................15, 22, 23

*France v. Touro Coll.*,
   No. 14-4613, 2016 WL 1105400 (E.D.N.Y. Feb. 16, 2016), *report and
   recommendation adopted sub nom., Ueth France v. Touro Coll.,* No. 14-4613,
   2016 WL 1117459 (E.D.N.Y. Mar. 21, 2016) ................................................................18, 21

*Garber v. Legg Mason, Inc.*,
   347 F. App'x 665 (2d Cir. 2009) ...........................................................................................13

*Guzman v. News Corp.*,
   No. 09-9323, 2013 WL 5807058 (S.D.N.Y. Oct. 28, 2013)...................................................22

*Hargett v. Metro. Transit Auth.*,
  552 F. Supp. 2d 393 (S.D.N.Y. 2008) ...........................................................................14

*Hellstrom v. Aramark Am. Food Servs., Inc.*,
  926 N.Y.S.2d 344 (N.Y. Sup. Ct. 2011) .......................................................................15

*Hugee v. SJC Grp., Inc.*,
  No. 13-0423, 2013 WL 4399226 (S.D.N.Y. Aug. 14, 2013) ........................................20

*Kearney v. Kessler Family LLC*,
  No. 11-6016, 2011 WL 2693892 (W.D.N.Y. July 11, 2011) .......................................18

*Kilkenny v. Greenberg Traurig, LLP*,
  No. 05-6578, 2006 WL 1096830 (S.D.N.Y. Apr. 26, 2006) ........................................18

*Kramer v. Time Warner Inc.*,
  937 F.2d 767 (2d Cir. 1991) .........................................................................................13

*Krasner v. HSH Nordbank AG*,
  680 F. Supp. 2d 502 (S.D.N.Y. 2010) ..........................................................................24

*Lawrence v. IBM Corp.*,
  No. 12-8433, 2017 WL 3278917 (S.D.N.Y. Aug. 1, 2017) ...................................16, 17

*Lia v. Saporito*,
  909 F. Supp. 2d 149 (E.D.N.Y. 2012), *aff'd*, 541 F. App'x 71 (2d Cir. 2013) ..................5, 13

*Little v. Nat'l Broad. Co.*,
  210 F. Supp. 2d 330 (S.D.N.Y. 2002) ..........................................................................24

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
  723 F.3d 192 (2d Cir. 2013) .........................................................................................25

*Neitzke v. Williams*,
  490 U.S. 319 (1989) .......................................................................................................12

*Papp v. Debbane*,
  790 N.Y.S.2d 450 (N.Y. App. Div. 1st Dep't 2005) ....................................................15

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
  602 F.3d 57 (2d Cir. 2010) ...........................................................................................13

*Pu v. Russell Publ'g Grp., Ltd.*,
  No. 15-3936, 2016 WL 9021990 (S.D.N.Y. Sept. 2, 2016), *aff'd*, 683 F. App'x
  96 (2d Cir. 2017) .............................................................................................................5

*Shiflett v. Scores Holding Co.*,
  601 F. App'x 28 (2d Cir. 2015) ...............................................................................16, 20

*Snyder v. Advest, Inc.*,
   No. 06-1426, 2008 WL 4571502 (S.D.N.Y. June 8, 2008) ...............................................15, 23

*Woodell v. United Way of Dutchess Cty.*,
   357 F. Supp. 2d 761 (S.D.N.Y. 2005).......................................................................................16

**Statutes**

N.Y. Exec. Law § 296(1)(a).............................................................................................................14

**Other Authorities**

C.P.L.R. § 214(2) .............................................................................................................................25

Fed. R. Civ. P. 12(b)(6)..........................................................................................................1, 12, 13

N.Y.C. Admin. Code § 8-107(1)(a) ................................................................................................14

N.Y.C. Admin. Code § 8-502(d).....................................................................................................25

Defendant CBS Corporation[1] ("CBS Corporation") respectfully submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff Jacquelyn Musiello's First Amended Class Action Complaint ("FAC") pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons set forth below, Plaintiff's claims against CBS Corporation should be dismissed in their entirety.

## I.   <u>INTRODUCTION</u>

CBS Corporation previously moved to dismiss the claims against it for one fundamental reason: ***Plaintiff was never employed by CBS Corporation.***  On the contrary, Plaintiff only worked for an indirect subsidiary, CBS Radio Inc., which was acquired by Defendant Entercom Communications Corp. ("Entercom") almost three years ago in November 2017.  Entercom is a completely separate, publicly traded company that is not affiliated with CBS Corporation.

Rather than opposing the prior Motion to Dismiss, Plaintiff filed the FAC.  She attempts to add new causes of actions and additional purported class allegations, but her amended pleading does nothing to address the same legal defect in her claims.  Plaintiff's claims against CBS Corporation are still belied by the fact that she does not (and cannot) allege that she worked for CBS Corporation, or even that it had any involvement in a single decision relating to her *individual* employment.  Indeed, Plaintiff admits that CBS Corporation did not hire, pay, supervise, or discipline her, and had no role in her medical leave determinations or eventual separation of employment from CBS Radio Inc., her actual employer.

From December 2012 to February 2017, Plaintiff worked as a "Staff Accountant," "Senior Accountant," and later a purported "Payroll and Human Resources Manager" for CBS

---

[1] CBS Corporation is now known as ViacomCBS Inc. following the merger of Viacom Inc. with and into CBS Corporation on December 4, 2019, with CBS Corporation continuing as the surviving corporation, which has been renamed "ViacomCBS Inc."  For ease of reference only, this Motion refers to "CBS Corporation."

Radio Inc.[2]  In her FAC, Plaintiff admits that she was employed solely by CBS Radio Inc., that she was paid by CBS Radio Inc., that she worked only at CBS Radio Inc.'s New York office location at 345 Hudson Street, that she performed payroll, benefits, and "human resources" support only for CBS Radio Inc. employees, that she was supervised only by CBS Radio Inc. employees, and that the alleged discrimination and harassment she claims to have experienced was solely by CBS Radio Inc. employees.  Ultimately, she failed to return to her job at CBS Radio Inc. when her medical leave of absence ended in or around early February 2017, and she is now claiming – for the first time more than three years later – that her decision was prompted by her unwillingness to work in a hostile environment.  In short, Plaintiff now conveniently claims that she was constructively discharged on February 17, 2017, not only by CBS Radio Inc., her actual employer, but also by its indirect parent company, CBS Corporation, as her employer.

Plaintiff previously made the same factual allegations against CBS Corporation in a sworn affidavit filed less than a year ago in support of a lawsuit brought by another former CBS Radio Inc. employee, Lauren Lockwood, in the New York Supreme Court for the County of Kings.  Ms. Lockwood, who is represented by the same counsel now representing Ms. Musiello, similarly attempted to assert employment discrimination claims against Entercom, CBS Radio entities, and CBS Corporation on both single and joint employer theories.  Ms. Lockwood's attempts to bring CBS Corporation into the case, however, were soundly rejected.  Judge Pamela L. Fisher granted CBS Corporation's motion to dismiss after considering the same "facts" which are alleged in Ms. Musiello's affidavit filed in support of *Lockwood*, and which now reappear in Plaintiff's FAC, finding that "plaintiff has not alleged sufficient facts to support that CBS

---

[2] CBS Radio Inc. is now known as Entercom Media Corp. following the merger of CBS Radio Inc. with and into Entercom Communications Corp. ("Entercom") on November 17, 2017.  For ease of reference only, this Motion refers to "CBS Radio Inc."

Corporation was a single or joint employer." *See* February 27, 2020 Decision and Order at Dkt. No. 93 (the "Lockwood Decision"), attached to the Declaration of Chelsea L. Conanan, Esq. ("Conanan Decl.") as Exhibit A. Here, dismissal of Plaintiff's case is also warranted.

Notwithstanding Judge Fisher's ruling, Plaintiff and her counsel are trying yet again to expand their case to include CBS Corporation in a transparent attempt to broaden discovery and capitalize on entirely unrelated issues that they have read in the news. Plaintiff litters the FAC with indiscriminate references to "CBS" to refer collectively to CBS Corporation *and* each of the individually named former, indirect subsidiaries of CBS Corporation (CBS Radio Inc. and CBS Sports Radio Network Inc.[3]), as though they are one and the same, in a misleading attempt to avoid alleging sufficient facts that CBS Corporation actually controlled or was even involved in Plaintiff's individual employment. She then alleges in conclusory terms that CBS Corporation exerted control over CBS Radio Inc. such that the two entities were part of a "single employer" or were "joint employers" and infers that CBS Corporation perpetuated a "top down workplace culture," a theory bolstered only by parroting allegations in two articles published by *The New Yorker* and *The New York Times* about former President and CEO of CBS Corporation, Leslie Moonves, notwithstanding the fact that neither article makes any mention of CBS Radio Inc. or any CBS Radio Inc. employees.

These attempts to transform an individual employment discrimination claim against the company for which she worked – CBS Radio Inc. – into far-reaching class-wide claims against a former corporate parent company, rely on specious allegations of workplace rumor and gossip *at CBS Radio Inc.* (all of which are time-barred as they occurred prior to 2017, well before the

---

[3] CBS Sports Radio Network Inc., a former subsidiary of CBS Radio Inc., is now known as Entercom Sports Radio, LLC following the merger of CBS Radio Inc. with and into Entercom in November 2017. FAC ¶ 34. For ease of reference only, this Motion refers to "CBS Sports Radio Network Inc."

applicable three-year statute of limitations).  But wholly absent from the FAC is any *specific factual* allegation that Plaintiff was actually employed by CBS Corporation (she admits she was not), or that CBS Corporation had any involvement whatsoever in her individual employment or eventual separation from CBS Radio Inc. (it did not).  Other than merely reciting the elements of the single employer and joint employer tests, Plaintiff does not allege facts plausibly showing that she was ever employed by CBS Corporation, that she ever worked at CBS Corporation's office (she admits she did not), or that CBS Corporation exercised the requisite level of control over CBS Radio Inc.'s business operations, management, financial controls, or labor relations, much less *Plaintiff's individual* hiring, discipline, supervision, or termination, which are the most important factors, such that it could be considered Plaintiff's *de facto* "employer."  Moreover, Plaintiff's allegations describing connections between CBS Corporation and CBS Radio Inc. (*i.e.,* adherence to the same general policies, shared technology systems, etc.) do not suffice to establish a single or joint employer under the weight of authority in this Circuit, and certainly do not defeat the strong presumption against holding parent corporations liable for the acts of its subsidiaries.

As demonstrated further below, Plaintiff's claims against CBS Corporation rest entirely on a threadbare theory based solely on news articles that a "toxic" workplace culture started at the "top" of a distinct corporate parent company and trickled down so much that it ended up affecting her individual employment as an employee of a former, indirectly owned subsidiary. *Iqbal/Twombly* does not allow claims based solely on suggestion, speculation, and second-hand accounts to proceed.  Each of Plaintiff's claims against CBS Corporation, therefore, should be dismissed in their entirety.

## II.   SUMMARY OF ALLEGED FACTS[4]

### A.   The Relevant Parties.

#### 1.   Plaintiff Jacquelyn Musiello.

In December 2012, Jacquelyn Musiello ("Plaintiff") was hired by CBS Radio Inc.'s

"Yankee's Radio Network," which aired on the WFAN radio station (which in turn was owned

and operated by a subsidiary of CBS Radio Inc.), as a "Staff Accountant." FAC ¶¶ 8-9; *see also*

May 21, 2019 Affidavit of Jacquelyn Musiello, filed in *Lockwood v. CBS Corporation, et al.*,

Index No. 514650/2018 (N.Y. Sup. Ct., Kings Cnty.) (the "Lockwood Matter") ("Musiello Aff.")

at ¶ 2 ("I was employed by CBS Radio Inc. and CBS Sports Radio[.]").[5] In or around March

2016, Plaintiff alleges that she was promoted to "Senior Accountant." FAC ¶ 16. As an

Accountant for CBS Radio Inc., Plaintiff alleges that she "field[ed] employee complaints,"

"conduct[ed] investigations and interviews," and handled various payroll matters for "CBS

Radio employees." FAC ¶¶ 13, 14, and 15 (alleging that she "assisted CBS Radio employees").

Plaintiff does not allege that she ever performed such work for CBS Corporation employees.

---

[4] The following allegations are from the FAC and are assumed to be true only for purposes of this Motion.

[5] This Court may take judicial notice of Plaintiff's sworn affidavit filed in the *Lockwood* Matter (and which is attached to the Conanan Decl. at Exhibit B) to the extent Plaintiff asserts facts inconsistent with the allegations set forth in her present FAC. *See, e.g., Pu v. Russell Publ'g Grp., Ltd.*, No. 15-3936, 2016 WL 9021990, at *7 (S.D.N.Y. Sept. 2, 2016), *aff'd*, 683 F. App'x 96 (2d Cir. 2017); *Lia v. Saporito*, 909 F. Supp. 2d 149, 178 (E.D.N.Y. 2012), *aff'd*, 541 F. App'x 71 (2d Cir. 2013) (the Court "may properly take judicial notice of the fact that [Plaintiff] made certain statements during [a sworn statement in another] proceeding that are inconsistent with the factual allegations in the [] complaint").

In the *Lockwood* Matter, Ms. Lockwood, who is represented by the same counsel as Ms. Musiello, alleged similar claims for hostile work environment, gender discrimination, and retaliation against CBS Corporation on both single and joint employer theories. On February 28, 2020, Judge Pamela L. Fisher granted CBS Corporation's Motion to Dismiss. In so ruling, Judge Pamela Fisher considered Ms. Musiello's affidavit (as well as an affidavit filed by Margaret Marion), and held that neither Musiello's affidavit nor Lockwood's Complaint alleged sufficient facts that they were employed by CBS Corporation under a single or joint employer theory. Lockwood Decision at p. 8. Instead, Judge Fisher concluded that "Plaintiff's contention that defendant CBS Corporation is responsible for alleged discrimination by CBS Radio, because of a top-down workplace culture *is speculative and lacks factual support*" (p. 8, emphasis added) and further held that, most importantly, there was no factual support in Musiello's affidavit nor the Lockwood Complaint that CBS Corporation hired, fired, or supervised Ms. Lockwood such that it could be considered her single or joint employer. *Id.* at p. 9.

During the entire time she worked for CBS Radio Inc., Plaintiff worked exclusively at CBS Radio Inc.'s offices at 345 Hudson Street, New York, New York (the "Hudson Street Location").  FAC ¶ 9; Musiello Aff. at ¶ 2 ("My office at CBS Radio was located at 345 Hudson Street[.]")).  Plaintiff further admits in the FAC that she was paid only by CBS Radio Inc.  FAC ¶ 98 ("Plaintiff Musiello's salary was paid by CBS Radio . . . .").

Plaintiff also alleges vaguely that she was denied overtime wages *by CBS Radio Inc.* "despite qualifying" for overtime from approximately 2015 through the end of her employment on February 17, 2017.  FAC ¶¶ 16, 165-66.  Plaintiff does not allege how many overtime hours per week she allegedly worked nor does she specify the workweeks over the two-year period in which she purportedly worked such overtime.  *Id.*  Plaintiff further alleges that CBS Corporation awarded her 41 restricted share units of stock (valued at $2,500) in 2015.  FAC ¶ 98, p. 23. Though Plaintiff alleges that the stock letter she received is "signed by Leslie Moonves," it is not.  *Id.*  Plaintiff does not allege that she had any interaction whatsoever with Mr. Moonves at any point during her employment with CBS Radio Inc., or that he was ever involved in any decision relating to her individual employment.

In approximately April 2013, while still employed by CBS Radio Inc., Plaintiff alleges that her title changed to "Payroll and Human Resources Manager Generalist" and she thereafter began reporting to both Margaret Marion ("Ms. Marion"), CBS Radio Inc.'s "Director of HR," and Randall Friend, then CBS Radio Inc.'s Controller ("Mr. Friend").  FAC ¶¶ 65, 12; *see also* ¶ 125 (describing Marion as "CBS's Human Resources Director *for CBS Radio*") (emphasis added).[6]  Plaintiff suggests that she "administered" "CBS Corporation's HR policies [and]

---

[6] In the *Lockwood* Matter, which Plaintiff relies on and incorporates its pleadings by reference in her Complaint (FAC ¶ 115 n. 23), Ms. Marion was alleged to be "[a]t all relevant times [*i.e.,* February 2006 to July 17, 2017] . . . the Director of Human Resources for [CBS Radio Inc.]"  *See Lockwood* Amended Complaint at Dkt. No. 25 in the *Lockwood* Matter ("*Lockwood* Compl.") (attached to Conanan Decl. as Exhibit C), at ¶¶ 64, 65, and 78.

Business Conduct Statement" by "investigat[ing] employee complaints" of "alleged hostile work environment, sexual harassment, sex discrimination, and unequal treatment."  FAC ¶ 14; *see also* FAC ¶ 126 (alleging that Plaintiff made "corporate decisions" affecting the "terms and conditions of employment" of CBS Radio employees).[7]  She does not allege, however, that she performed human resources or payroll duties for or on behalf of CBS Corporation or its employees.  To the contrary, Plaintiff concedes that she was "directly responsible for managing the HR needs for *CBS Radio's* 500 employees" – not CBS Corporation's employees.  FAC ¶ 125 (emphasis added).

In sum, at no point in time was Plaintiff employed by CBS Corporation, nor did she exercise any job responsibilities for CBS Corporation employees.

## 2. CBS Corporation.

CBS Radio Inc. and its subsidiary CBS Sports Radio Network Inc. were wholly-owned, indirect subsidiaries of CBS Corporation.  FAC ¶ 35.  Prior to the merger with Entercom in 2017 (described below), CBS Radio Inc. – Plaintiff's *actual* employer – was three levels removed from CBS Corporation in its former corporate hierarchy.

As Plaintiff acknowledges throughout her FAC, CBS Corporation maintained a separate office (located at 51 West 52nd Street, New York, New York (the "52nd Street Location") (FAC ¶ 10)) from CBS Radio Inc.; a separate business portfolio from CBS Radio Inc. (FAC ¶ 2 (describing CBS Corporation's television, cable, online content, and publishing operations)); separate employment and business policies (*See, e.g.,* FAC ¶ 89 (referencing the CBS Radio Policy Guide "that contains CBS policies, procedures, and programs for the *CBS Radio* staff

---

[7] It is telling that Plaintiff did not allege that she ever conducted sexual harassment or discrimination-related investigations as part of her job responsibilities in her prior affidavit as she now so claims in the FAC.  *Compare* Musiello Aff. at ¶ 8 to FAC  ¶¶ 13 and 14.

employees") (emphasis added)); and separate employees, staff, and executives from the radio

business subsidiaries.  *See, e.g.*, FAC ¶ 65 (describing "*CBS Corporation*" employees and a

"*CBS Radio*" employee); ¶ 130 (alleging that Plaintiff "consulted *CBS Corporation's* Human

Resources department and In House Counsel").

> a.   **CBS Corporation's Radio Business Spin-Off And CBS Radio Inc.'s Subsequent Merger With Entercom.**

In July 2016, CBS Corporation began the process of spinning off its subsidiary radio

business, CBS Radio Inc.  *See* October 16, 2017 Entercom Communications Corp. Schedule 14-

A filing (the "Proxy Statement") at pp. 113-14.[8]  In September 2016, CBS Corporation

completed various reorganization transactions, which resulted in the consolidation of all entities

comprising its *radio* businesses under *CBS Radio Inc.  See* Proxy Statement at p. F-19.

In February 2017, CBS Corporation entered into an agreement with Entercom to combine

CBS Radio Inc. with Entercom in a merger.  *Id.* at F-5.  On October 16, 2017, Entercom filed a

Definitive Proxy Statement with the SEC announcing a special meeting relating to the

anticipated merger, and indicating that CBS Radio Inc. will continue as a "wholly owned

subsidiary of Entercom."  Proxy Statement at pp. 107, 109, 156, 159.  The Proxy Statement

further specified that following the closing of the merger, Mr. Moonves would serve on the

board of Entercom and then be required to "execute and deliver an irrevocable letter of

resignation from the Entercom board of directors[.]"  *Id.* at 156; FAC ¶ 42.  Thus, within six

months of the closing of the merger or before the first annual meeting of Entercom following the

---

[8] In connection with these transactions, various required filings were submitted to the Securities and Exchange Commission ("SEC").  Plaintiff's "summary" of these SEC filings in the FAC (at ¶¶ 39-52) contain numerous factual inaccuracies and mischaracterizations of their terms.  For the Court's reference, CBS Corporation highlights *infra* some of these inaccuracies, though invites the Court to refer to the filings for a complete recitation of their terms.

closing of the merger, Mr. Moonves would no longer serve as a Board Member of any of the radio businesses.    Proxy Statement at 152.

The Proxy Statement also contained a "Master Separation Agreement Between CBS Corporation and CBS Radio Inc." (the "Master Separation Agreement"), which detailed the various actions CBS Corporation and CBS Radio Inc. would take following the Entercom merger.  The Master Separation Agreement specified that the "Radio Group" (defined as "CBS Radio [Inc.] or any of its direct or indirect subsidiaries") would *continue* to "pay, perform, fulfill and discharge" all liabilities regarding CBS Radio Inc.'s benefits plans, employment or termination of employment of all Radio Group employees, and any other liabilities expressly assigned to any member of the Radio Group, occurring or arising before the merger date.  Proxy Statement at B-36 (Article VII (("Matters Relating to Employees")).  In contrast, the "CBS Group" (defined as "CBS and the CBS Subsidiaries, *other than any members of the Radio Group*" (emphasis added)) would separately *continue* to pay, perform, fulfill and discharge the same duties and obligations with respect to CBS Group employees.  *Id.*  The Master Separation Agreement also acknowledged CBS Corporation's agreement not to "directly or indirectly, solicit for employment or hire any of the CBS Radio employees" without Entercom's express written consent following the merger.  Proxy Statement at A-80.

On November 17, 2017, CBS Radio Inc. completed its merger with Entercom, and is now a wholly-owned subsidiary of Entercom known as Entercom Media Corp.  FAC ¶¶ 51-52.

### B.    Plaintiff's Vague And Generalized Allegations Of A "Top Down Workplace Culture Of Gender Bias And Sex Discrimination."

The majority of Plaintiff's allegations in the FAC relate to incidents allegedly experienced by *other* female CBS Radio Inc. employees at unspecified time periods (for which Plaintiff had no personal involvement or firsthand knowledge).  Additionally, the FAC in large

part recites stories pulled from articles in *The New Yorker* and *The New York Times* (the "*Times*") that do not even reference CBS Radio Inc.  FAC ¶¶ 100, 108 (referencing allegations from *The New Yorker* and *Times* articles).  Neither the FAC nor Plaintiff's affidavit in the *Lockwood* Matter, however, alleges that Plaintiff had any personal knowledge of the alleged incidents experienced by other female employees or that those incidents affected the terms or conditions of her employment.  Indeed, as far as her own personal experience, Plaintiff alleges a handful of incidents involving the conduct of a single CBS Radio Inc. employee that occurred prior to 2017.  In short, Plaintiff's allegations about her own working conditions involve only CBS Radio Inc. employees with whom she interacted in the course of her employment, and not any CBS Corporation employees.

Specifically, Plaintiff alleges that she was subjected to "flirtatious banter" by Dan Taylor ("Mr. Taylor"), a CBS Radio Inc. employee, at unspecified periods during her employment. FAC ¶ 147.  On "one occasion," Plaintiff alleges that Mr. Taylor asked her to lunch because she was up for a promotion at the time and Mr. Herman, the COO for CBS Radio Inc., would also be attending the lunch.  *Id.*  Plaintiff further alleges that Mr. Taylor sent her gifts and asked *other* female employees to accompany him on business trips.  FAC ¶¶ 148, 150.  Plaintiff alleges that she eventually complained to Ms. Marion and Mr. Friend about Mr. Taylor's alleged interactions with *other* female employees.  FAC ¶ 152.[9]  Nowhere in the FAC does Plaintiff even suggest that Mr. Taylor was employed by CBS Corporation (because he was not).

In addition to Mr. Taylor, Plaintiff alleges that three other male CBS Radio Inc. employees (*i.e.,* Marc Rayfield, Mr. Herman, and Frank Iemmiti) made sexist and other

---

[9] Plaintiff also purports to reference alleged incidents experienced by other former employees, anonymized by their initials in the FAC.  *See, e.g.*, FAC ¶¶ 140-44, 150, 15; *see* Musiello Aff. *generally*.  For each of these unsubstantiated allegations, Plaintiff does not allege that she actually witnessed the alleged conduct nor does she allege that she experienced conduct even remotely similar to that experienced by these unnamed individuals.

purportedly inappropriate comments to other CBS Radio Inc. female employees.  FAC ¶¶ 156-58.  Plaintiff also alleges that "during [her] employment," unspecified employees engaged in consensual sexual relationships and that, on one occasion sometime in 2016, Plaintiff witnessed two employees having sex in "CBS Radio's office" after work hours.  FAC ¶¶ 160-61.  Plaintiff claims that she escalated this 2016 incident to Ms. Marion, who failed to take appropriate action. FAC ¶ 162.  Ms. Marion was a CBS Radio Inc. employee.  FAC ¶ 125 (describing Marion as "CBS's Human Resources Director *for CBS Radio*") (emphasis added); *Lockwood* FAC ¶ 78 (alleging that "[a]t all relevant times, Margaret Marion was the Director of Human Resources for *Defendant CBS Radio*") (emphasis added).  Plaintiff also alleges – without any specifics as to timeframes or individual employees – that Ms. Marion directed her to violate human resources policies regarding payroll and medical leave policies, including regarding the payment of overtime wages.  FAC ¶ 163.

The remainder of the FAC describes publicly reported allegations against Mr. Moonves, which have nothing to do with Plaintiff or CBS Radio Inc.[10]  The Moonves allegations largely parrot articles published in *The New Yorker* and the *Times* in 2018, neither of which mention CBS Radio Inc. or any CBS Radio Inc. employees.  FAC ¶¶ 100-20.  Plaintiff does not allege that she ever came into contact with Mr. Moonves at any point in time during her employment with CBS Radio Inc., or that he had any involvement in her individual employment issues or separation from CBS Radio Inc.

---

[10] In the first paragraph of the FAC, Plaintiff also references Marc Rayfield (a CBS Radio Inc. employee), Charlie Rose (former television news anchor), and Joseph Benigno (another CBS Radio Inc. employee), but does not allege she had any personal interactions with Rayfield, Rose, or Benigno.  FAC ¶ 1.  Nowhere else in the FAC does Plaintiff allege that she was ever harassed or discriminated against by any of these individuals, or that she interacted with them in any way during the course of her employment with CBS Radio Inc.

### C.   Plaintiff Fails To Return To Work At CBS Radio Inc.

Plaintiff alleges that in October 2015, she was hospitalized and later suffered a miscarriage.  FAC ¶ 171.  Approximately two months later, in December 2015, Plaintiff injured her foot and requested to take another medical leave for foot surgery.  FAC ¶ 167.  Without identifying when precisely she was on a leave of absence, Plaintiff alleges that Ms. Marion did not approve her leave until a year later, in approximately December 2016.  *Id.*  Plaintiff further alleges that, while on medical leave following foot surgery, Mr. Taylor (a CBS Radio employee) sent her an email saying that he was "thinking about [her]."  FAC ¶ 172.

Plaintiff failed to return to work after her second medical leave of absence concluded. She now contends that she was "unable to return" to work because of a hostile work environment at CBS Radio Inc., and that she was constructively discharged from her employment..  FAC ¶¶ 173-74.

### III.   LEGAL STANDARD

The purpose of Fed. R. Civ. P. 12(b)(6) is to eliminate baseless claims and thereby "streamline litigation by dispensing with needless discovery and factfinding."  *Neitzke v. Williams*, 490 U.S. 319, 319 (1989).  Thus, where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570. "[A] plaintiff's obligation to provide the 'grounds' of [her] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555 (citation omitted).  Rather, a plaintiff must plead sufficient "factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcraft v. Iqbal*, 556 U.S. 662, 678 (2009).  The mere possibility that a defendant has acted unlawfully is insufficient.  *Id.*  Indeed, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]"  *Twombly*, 550 U.S. at 555-56.

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court may consider the complaint itself and documents that are "incorporated in the complaint by reference."  *See Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation omitted).  Moreover, even "[w]here a document is not incorporated by reference, the court may neverless [sic] consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."  *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citation omitted).  In addition, the Court may take judicial notice of sworn statements made by the Plaintiff in another action if they are inconsistent with the factual allegations she makes in the present FAC.  *Lia*, 909 F. Supp. 2d at 178.  The Court may also take judicial notice of public filings, such as SEC filings, and documents filed in other litigations.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (applying judicial notice to public filings); *Garber v. Legg Mason, Inc.*, 347 F. App'x 665, 669 (2d Cir. 2009) (taking judicial notice of SEC filings).

Here, the Court may rely on the SEC filings and the CBS Radio Inc. Policy Guide explicitly referenced in Plaintiff's FAC, Plaintiff's May 21, 2019 affidavit filed in the *Lockwood* Matter, the Amended Complaint filed in the *Lockwood* Matter (Dkt. No. 25) referenced in the FAC, and Judge Fisher's February 27, 2019 Decision and Order granting CBS Corporation's motion to dismiss in the *Lockwood* Matter.

IV.    __ARGUMENT__

    A.    **Plaintiff Fails To Sufficiently Allege That CBS Corporation Was Her "Employer."**

Plaintiff claims that CBS Corporation exerted control over CBS Radio Inc. such that the two entities were part of a "single" or "joint" employer.  FAC ¶ 4.  Fatal to each of Plaintiff's theories of joint or common liability, however, is the absence of any plausible and well-pled facts suggesting that CBS Corporation ever employed Plaintiff or controlled her *individual* employment in any way.  There is not a single allegation in the FAC that CBS Corporation hired, paid, supervised, or disciplined Plaintiff or had any involvement in her medical leave and separation from CBS Radio Inc., her actual employer.  As noted above, the exact same claims against CBS Corporation – brought by another former CBS Radio Inc. employee represented by the same counsel as Ms. Musiello – were previously considered and rejected by Judge Fisher in the *Lockwood* Matter.  Indeed, the facts actually alleged in the instant FAC, which mirror those in Plaintiff's prior sworn affidavit in the *Lockwood* Matter, confirm that CBS Corporation was never Plaintiff's actual or putative employer.  Therefore, each of Plaintiff's claims against CBS Corporation should be dismissed.

    1.    **Plaintiff Fails To Sufficiently Allege That CBS Corporation And CBS Radio Inc. Were A "Single" or "Joint" Employers.**

Both the NYSHRL and NYCHRL make it unlawful for an "employer" to "refuse to hire or employ or to bar or to discharge from employment such individual [or person] or to discriminate against such individual [or person] in compensation or in terms, conditions or privileges of employment" on the basis of any protected characteristic, including on the basis of one's sex.  N.Y. Exec. Law § 296(1)(a); N.Y.C. Admin. Code § 8-107(1)(a).  There is no basis for a cause of action against an entity that did not employ the person claiming a violation of either statute.  *See, e.g.*, *Hargett v. Metro. Transit Auth.*, 552 F. Supp. 2d 393 (S.D.N.Y. 2008)

-14-

(dismissing a separate legal entity that was not plaintiff's employer); *see also Hellstrom v. Aramark Am. Food Servs., Inc.*, 926 N.Y.S.2d 344 (N.Y. Sup. Ct. 2011) (granting motion to dismiss NYSHRL and NYCHRL discrimination claims for failure to state a cause of action because plaintiffs "fai[led] to allege, as they must, that [defendant] was their employer"); *Papp v. Debbane,* 790 N.Y.S.2d 450 (N.Y. App. Div. 1st Dep't 2005) (affirming dismissal of NYSHRL and NYCHRL claims where plaintiff failed to allege any employment relationship with defendant).

There is a strong presumption that a parent corporation is *not* the employer of its subsidiary's employees.  Indeed, a parent will only be liable for the acts of its subsidiaries under a showing of "extraordinary circumstances."  *See, e.g.*, *Fenner v. News Corp.*, No. 09-9832, 2013 WL 6244156, at *9 (S.D.N.Y. Dec. 2, 2013) ("The law only treats the employees of a corporate entity as the employees of a related entity under extraordinary circumstances, just as the law only pierces the veil of a corporate entity under extraordinary circumstances.") (internal quotation and citation omitted); *Snyder v. Advest, Inc.*, No. 06-1426, 2008 WL 4571502, at *6 (S.D.N.Y. June 8, 2008) ("There is a strong presumption that a parent is not the employer of its subsidiary's employees, and courts do not readily find that related entities are single employers in discrimination cases[.]") (quotation and citation omitted); *Balut v. Loral Elec. Sys.*, 988 F. Supp. 339, 344 (S.D.N.Y. 1997) ("Under the doctrine of limited liability, a parent is liable for the acts of its subsidiary only under 'extraordinary circumstances.'  The doctrine therefore creates a strong presumption that a parent is not the employer of its subsidiary's employees.") (citation omitted).

The FAC fails to allege sufficient facts that would defeat this strong presumption.  While Plaintiff attempts to suggest that CBS Corporation is a "single employer" and – in a singular

fleeting mention in the entirety of the voluminous FAC – alleges that CBS Corporation was a "joint" employer with CBS Radio Inc. and CBS Sports Radio Network Inc. (FAC ¶ 4), Plaintiff identifies no facts to support her assertions.  Other than parroting the elements of a single employer or joint employer relationship, the FAC is devoid of any specific allegations demonstrating the requisite level of control by CBS Corporation over employment conditions at CBS Radio Inc. and, more importantly, over Plaintiff's *individual* employment.

To establish a "single employer" relationship, courts consider: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.  *Shiflett v. Scores Holding Co*., 601 F. App'x 28 (2d Cir. 2015) (internal citation and quotations omitted).  No one factor is determinative, though "control of labor relations" is considered a "central concern."  *Id*.  In other words, courts must consider which entity made the final decision with respect to the employment decisions being challenged as discriminatory.

Similarly, a "joint employer" relationship exists only if there is "sufficient evidence that a [putative employer] had immediate control over another company's employees, *and even more importantly, over the particular employee alleging discrimination*."  *Woodell v. United Way of Dutchess Cty.*, 357 F. Supp. 2d 761, 767 (S.D.N.Y. 2005) (quotation and citation omitted) (emphasis added).  In determining joint employer status, a court must assess whether the putative joint employer: (1) did the hiring and firing; (2) directly administered any disciplinary procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; and (5) participated in the collective bargaining process. *Lawrence v. IBM Corp.*, No. 12-8433, 2017 WL 3278917, at *5 (S.D.N.Y. Aug. 1, 2017)

(dismissing claims against parent company where facts were insufficient to establish parent's control of subsidiary under joint employer test).

Plaintiff tries to allege that the "CBS defendants" were a single employer or joint employer, but she falls far short. Her first attempt is little more than a labeling exercise and an apparent ploy to obfuscate the actual entities that are at issue. She lumps three distinct corporate entities – CBS Corporation, CBS Radio Inc., and CBS Sports Radio Network Inc. – into a single definition, which she calls "CBS." FAC ¶ 2. This indiscriminate "group pleading" tactic does not satisfy Plaintiff's burden of setting forth *specific facts* as to how CBS Corporation actually exercised control over CBS Radio Inc.'s employees including, most critically, Plaintiff herself. *See, e.g.*, *Bravo v. Eastpoint Int'l, Inc.*, No. 99- 9474, 2001 WL 314622, at *2 (S.D.N.Y. Mar. 30, 2001) (granting motion to dismiss where plaintiff "lump[ed] [several defendants] together as one in the allegations contained in the amended complaint"); *see also Lawrence*, 2017 WL 3278917, at *6 (explaining that merely referring to "Defendants" collectively, will "not suffice to hold a parent corporation liable under [] the joint employer [] doctrine"). It is telling that even with the opportunity to amend her pleading, Plaintiff has to continue to rely on impermissible group pleading.

Plaintiff also makes sweeping and conclusory statements in lieu of specific factual averments in an attempt to satisfy her burden. For example, she states that:

- "At all relevant times, Defendant CBS Corporation owned, operated, controlled, managed and supported financially and by its centralized policies, decision-making and reporting structure, Human Resources, it subsidiaries (also known as business units), and in particular, CBS Radio Inc. and CBS Sports Radio Inc.." FAC ¶ 36.

- "At all relevant times, Defendant CBS Corporation had immediate control over its subsidiary, CBS Radio Inc.'s employees; had commonality of hiring, firing, discipline, pay, insurance records and supervision and the right to control the means and manner of the employee's performance through its enforcement of CBS Corporation's own policies and procedures that governed Defendant CBS Radio Inc.'s employees." FAC ¶ 37.

-17-

- "At all relevant times, Defendant CBS Corporation exercised is right and authority to control and provided substantial income and resources to its subsidiaries, which Defendant CBS Corporation did not treat as stand-alone independent entities."  FAC ¶ 38.

-  "At relevant times, Defendant CBS Corporation, by its agents, servants and/or employees owned, controlled and supervised the activities and operation of its wholly owned subsidiaries, including Defendants CBS Radio Inc. and CBS Sports Radio, and their employees."  FAC ¶ 84.

- "At all relevant times, Defendant CBS Corporation, by its agents, servants and/or employees owned, governed, managed and approved the acts and business of its wholly owned subsidiaries, including Defendants CBS Radio Inc. and CBS Sports Radio, and their employees."  FAC ¶ 85.

- "At all relevant times, Defendant CBS Corporation had a fiduciary duty and acted with authority to make resolutions and decision-making as to CBS Corporation's subsidiaries, including CBS Radio Inc. and CBS Sports Radio, relating to their policies, procedures, and compliance with New York State and New York City anti-discrimination laws that regulated its conduct of business in the City and State of New York."  FAC ¶ 86.

These broad-brush assertions, however, are insufficient to demonstrate parent company control over the operations, labor relations, management, or finances of CBS Radio Inc.  Entirely absent from the FAC are any non-conclusory factual allegations that CBS Corporation exercised the requisite control over any specific CBS Radio Inc. employee.

Most importantly, Plaintiff fails to allege that CBS Corporation controlled any aspect of her own terms and conditions of employment with CBS Radio Inc.  Thus, Plaintiff's claims against CBS Corporation should be dismissed.  *See, e.g.*, *Kearney v. Kessler Family LLC*, No. 11-6016, 2011 WL 2693892, at *5 (W.D.N.Y. July 11, 2011) (granting motion to dismiss discrimination claims where plaintiff failed to sufficiently allege "any commonality of hiring, firing, discipline, pay, insurance, records, or supervision" between putative employer and plaintiff's actual employer); *Kilkenny v. Greenberg Traurig, LLP*, No. 05-6578, 2006 WL 1096830, at *4 (S.D.N.Y. Apr. 26, 2006) (granting motion to dismiss discrimination claims under NYCHRL where plaintiff "[did] not provide any supported allegations that [the putative employer] exerted actual control over his hiring, firing, discipline, pay, or supervision"); *France*

-18-

*v. Touro Coll.*, No. 14-4613, 2016 WL 1105400, at *8 (E.D.N.Y. Feb. 16, 2016), *report and*

*recommendation adopted sub nom.*, *Ueth France v. Touro Coll.,* No. 14-4613, 2016 WL

1117459, at *8 (E.D.N.Y. Mar. 21, 2016) (granting motion to dismiss sexual harassment claims

under Title VII, the NYSHRL, and NYCHRL against defendant where plaintiff failed to allege

any facts as to "what role [defendant] played in determining plaintiff's terms and conditions of

employment that would satisfy the requirements of *Iqbal* and *Twombly*[]").

### 2. Plaintiff's Admissions In The FAC Further Demonstrate That She Was Employed Exclusively By CBS Radio Inc.

In contrast to the conclusory allegations set forth above, there are sufficient allegations to

establish conclusively that Plaintiff was employed solely by CBS Radio Inc., and that the

decisions affecting her employment were made by the same CBS Radio Inc. employees with

whom she worked and interacted with on a daily basis while working exclusively at CBS Radio

Inc.'s Hudson Street Location.  Specifically:

- Plaintiff admits that she was "employed by CBS Radio [Inc.]" and that she was paid by CBS Radio Inc.  FAC ¶¶ 8, 9, 98; Musiello Aff. at ¶ 2.

- Plaintiff admits that she worked exclusively at CBS Radio Inc.'s Hudson Street Location. Plaintiff does not allege that she ever worked at CBS Corporation's office at the 52nd Street Location.  FAC ¶ 9.

- Plaintiff admits that CBS Radio Inc. employees Margaret Marion and Dan Taylor made decisions that affected the terms and conditions of her employment and directly supervised her.  FAC ¶ 59 (alleging that Mr. Taylor is being sued in his personal capacity and as an employer); ¶ 63 (alleging that Ms. Marion was authorized to make decisions that affected the terms and conditions of Plaintiff's employment).  In contrast, there is not a single allegation in the FAC that any CBS Corporation employee made any decisions affecting Plaintiff's employment or supervised her.

- Plaintiff alleges she was responsible for the payroll and benefits issues for only *CBS Radio Inc.* employees.  *See, e.g.*, FAC at FAC ¶¶ 13, 14, and 15 (alleging that Plaintiff "assisted CBS Radio employees"); ¶ 125 (alleging that Plaintiff was "directly responsible for managing the HR needs for *CBS Radio's* 500 employees during her employment") (emphasis added).  Notably, Plaintiff does not allege that she had any responsibility over or direct involvement with the payroll, benefits, or human resources matters affecting *CBS Corporation* employees.

-19-

These admissions provide yet another basis for the dismissal of Plaintiff's claims against CBS Corporation. *See, e.g., Hugee v. SJC Grp., Inc.*, No. 13-0423, 2013 WL 4399226, at *8 (S.D.N.Y. Aug. 14, 2013) (granting motion to dismiss where plaintiff failed to put forth evidence that defendant had the authority to hire and fire him); *see also Shiflett*, 601 F. App'x at 31 (affirming summary judgment where plaintiff "acknowledge[d] that [the named employer] was the payor on her checks" and further noting that "while [both companies] did share a corporate office, that was not the location at which [Plaintiff] worked").

Moreover, the two individuals Plaintiff accuses of harassing, discriminating, or retaliating against her – Ms. Marion and Mr. Taylor – were employed by CBS Radio Inc. (not CBS Corporation). FAC ¶ 125 (describing Marion as "CBS's Human Resources Director *for CBS Radio*"); ¶ 127 (describing Mr. Taylor as a "*CBS Radio* host") (emphasis added); *accord Lockwood* FAC ¶ 78 (alleging that "[a]t all relevant times, Margaret Marion was the Director of Human Resources for *Defendant CBS Radio*") (emphasis added). These are the same individuals Plaintiff alleges directly supervised her (FAC ¶ 64), addressed or allegedly failed to address her complaints (FAC ¶ 162), directed her to violate human resources, payroll, and other employment policies (FAC ¶ 163), and made decisions about her medical leave (FAC ¶ 168).[11] **Plaintiff does not identify a single CBS Corporation employee who exercised control over the employment decisions about which she complains.**[12]

---

[11] Plaintiff's reference to Ms. Marion's LinkedIn profile should be disregarded for the same reason Judge Fisher rejected it: "CBS Corporation is not bound by [Ms. Marion's] characterization of her employment." Lockwood Decision at pp. 8-9.

[12] Plaintiff also vaguely references a purported "common enterprise" theory (FAC ¶ 4); however, this theory (assuming it even applies in the employment discrimination context) does not provide a separate basis to hold CBS Corporation liable for the same reasons her single and joint employer theories fail: Plaintiff fails to sufficiently allege that CBS Radio Inc. and CBS Corporation exerted "common control," transacted business through a "maze of interrelated companies," or that they "commingle[d] funds." *See In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 538-39 (S.D.N.Y. 2008), *aff'd*, 730 F.3d 170 (2d Cir. 2013).

3.      **Plaintiff's Allegations Regarding CBS Corporation's Employment Policies Fail To Sufficiently Allege Any Single Or Joint Employer Relationship With CBS Radio Inc.**

Far from alleging any factual basis for sustaining claims against CBS Corporation, Plaintiff next alleges – without any specificity – that CBS Corporation "promulgated, drafted and approved" human resources and other policies for its subsidiaries and also monitored their compliance with such policies.  FAC ¶¶ 87, 89.  Plaintiff further alleges that she and Ms. Marion were required to administer CBS Corporation's policies (including its Business Conduct Statement) and that Ms. Marion was involved in "strategic" policy-making for CBS Corporation. FAC ¶¶ 10, 14, 72.  These generalized allegations about CBS Corporation's human resources and other policies, however, cannot save the claims against a parent company.

First, other than referencing CBS Corporation's Non-Discrimination and Anti-Harassment policy, Business Conduct Statement, and referencing vague "uniform employment policies" (FAC ¶ 1), Plaintiff fails to allege which policies CBS Corporation "promulgated, drafted, or approved" on behalf of its subsidiaries, which policies Ms. Marion "administered and effectuated" for CBS Corporation's "predominantly male executives" (FAC ¶ 70), which "company-wide projects and policy initiatives" for which Ms. Marion was a "key contributor" (FAC ¶ 74), and which policies "affected CBS Corporation and its subsidiary, CBS Radio's 126 radio stations" (FAC ¶ 74).  Further, there is no allegation in the FAC that any particular CBS Corporation employee enforced any of these policies at CBS Radio Inc., and, most significantly, *not a single allegation that CBS Corporation enforced its policies against Plaintiff.  See also France*, 2016 WL 1105400, at *8 (dismissing NYSHRL and NYCHRL claims where plaintiff failed to allege any facts as to "what role [defendant] played in determining plaintiff's terms and conditions of employment that would satisfy the requirements of *Iqbal* and *Twombly*[]").

Second, Plaintiff's reference to a "Policy Guide" that contains "policies, procedures, and programs for the CBS Radio staff employees" fails to demonstrate the requisite level of control between CBS Corporation and CBS Radio Inc. to establish single or joint employment.  In fact, the Policy Guide *is CBS Radio Inc.'s Policy Guide* (it was previously attached to Lockwood's opposition to CBS Corporation's Motion to Dismiss and labeled "CBS Radio's Policy Guide" (at Dkt. No. 90 in *Lockwood*), and this Court may consider it in deciding this Motion because it is incorporated by express reference in the FAC), and it demonstrates the degree of operational separation between CBS Corporation and CBS Radio Inc.  *See* Conanan Decl. Ex. D.  For example, the Policy Guide contains policies that are unique *only* to CBS Radio employees, and which do not apply to CBS Corporation employees (e.g., policies relating to vacation time, merit increases, rehiring and reference check processing, among other differences).[13]

Moreover, even if Plaintiff had alleged specific facts as to which policies CBS Corporation drafted and administered with respect to former subsidiaries, the weight of authority within this Circuit is that these allegations alone are insufficient to establish a single or joint employer relationship.  *See, e.g.*, *Fenner*, 2013 WL 6244156, at *10 (holding that "the fact that the [subsidiary] adopted policies promulgated by [the corporate parent] is insufficient to show that [the corporate parent] exercised centralized control over the [subsidiary's] employees"); *Guzman v. News Corp.*, No. 09-9323, 2013 WL 5807058, at *10 (S.D.N.Y. Oct. 28, 2013) (finding that "the fact that the [subsidiary] adopted policies promulgated by [the parent corporation] is insufficient to show that [parent corporation] exercised centralized control over the [subsidiary's] employees"); *Snyder*, 2008 WL 4571502, at *7 (finding that "the mere fact that

---

[13] Likewise, CBS Corporation's Business Conduct Statement – which Plaintiff cites throughout her Complaint – expressly disclaims any single or joint employer relationship by specifying that: "When we refer to 'your Company' [in the BCS], we mean *the business unit you work for, or CBS Corporation if you are a director, officer, or employee of the CBS Corporation corporate offices.*"

[the wholly-owned subsidiary] agreed to be bound by certain standards of conduct set forth by [parent corporation] does not indicate that [parent corporation] exercised control over or made final decisions regarding the employment of [plaintiff]") (quotation and citation omitted); *Balut*, 988 F. Supp. at 347 (holding that "[a] parent's broad general policy statements regarding employment…are not enough" to establish single employer status) (quotation and citation omitted); Lockwood Decision at p. 8.  Thus, Plaintiff's allegations do not suffice either.

### 4.    The Remaining FAC Allegations Similarly Do Not Show Control By CBS Corporation.

Plaintiff's allegations that she routinely received emails from "CBS Corporate,"[14] witnessed Ms. Marion have "regular contact" with (unnamed) "CBS Executives," and that Plaintiff was "instructed to refer all critical questions or issues []" to unidentified "CBS Executive Management, CBS's Vice President of HR or CBS's In-House Legal Counsel" also fail to establish that CBS Corporation was her employer.  FAC ¶ 129.  At most, these allegations highlight the incidental and indirect level of control a parent corporation would have exercised over a subsidiary, which this Court repeatedly has held is insufficient to "collapse corporate formalities" between parent and subsidiary.  *See, e.g.*, *Benzinger v. Lukoil Pan Ams., LLC*, No. 16-8533, 2020 WL 1322478, at *25 (S.D.N.Y. Mar. 20, 2020) (Engelmayer, J.) (observing that "employees of each business 'can maintain some amount of communication with senior employees' of the other 'without collapsing corporate formalities'") (quoting *Fenner,* 2013 WL 6244156, at *9); *Balut*, 988 F. Supp. at 345 ("The fact that [parent company] reviewed [subsidiary's] operations biannually, however, does not demonstrate an interrelationship, because a parent typically reviews a subsidiary's progress on a periodic basis.").  The same holds true for

---

[14] Contrary to her vague generalizations in the FAC (*see* ¶ 11), Plaintiff does not allege that anyone specifically from CBS Corporation "monitored" the payroll records of the CBS Radio employees for which she was responsible (or herself), that she ever had a "CBS.com" email address, or that she ever "transfer[ed]" to CBS Corporation.

Plaintiff's generalized allegations about CBS Radio "charg[ing] back CBS" for "work performed for CBS," which (treating such allegations as true for purposes of this motion only) merely demonstrate that CBS Corporation and CBS Radio Inc. kept their payroll and other expenses separate.  FAC ¶ 135; Lockwood Decision at p. 8.

       Finally, the only remaining allegations in the FAC involve Plaintiff's sweeping and factually unsupported inference that CBS Corporation perpetuated a "top down workplace culture" starting with Mr. Moonves and spreading to each separate, indirect subsidiary, eventually making its way to the Hudson Street Location where Plaintiff worked.  FAC ¶¶ 113-14.  Plaintiff's "top down" culture allegation fails to rise above nonactionable speculation and is simply an irrational inference.  Plaintiff's theory – premised entirely on two news articles that have nothing to do with Plaintiff's employment or the decisions challenged in the FAC – does not point to any *facts* that would plausibly suggest that CBS Corporation exerted sufficient control over CBS Radio Inc., or that anyone from CBS Corporation (including Mr. Moonves) had any involvement in the circumstances of Plaintiff's individual employment.  *See, e.g.*, *Fattoruso v. Hilton Grand Vacations Co., LLC*, 873 F. Supp. 2d 569, 578 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 26 (2d Cir. 2013) (dismissing plaintiff's retaliation claim based on his reporting of *other* female employees' being subjected to workplace harassment); *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 508, 514 (S.D.N.Y. 2010) (granting motion to dismiss sexual harassment claims where plaintiff's complaint alleged, *inter alia*, a "culture of widespread sexual favoritism" and a "demeaning view of women in the workplace"); *see also Little v. Nat'l Broad. Co.*, 210 F. Supp. 2d 330, 367-68 (S.D.N.Y. 2002) (plaintiff's hostile work environment claims failed where they involved "different co-workers and supervisors, in different time periods and on different [TV] shows"); Lockwood Decision at p. 8 (concluding that plaintiff's

allegations of a "top-down workplace culture" were "*speculative and lack[ed] factual support*") (emphasis added). These allegations are the very "labels and conclusions" insufficient to overcome dismissal. *Twombly*, 550 U.S. at 555.

At bottom, Plaintiff's FAC lacks any specific facts linking CBS Corporation to any control over CBS Radio Inc., or over Plaintiff's individual hiring, discipline, supervision, or termination, much less Plaintiff's alleged individual claims of sexual harassment, gender discrimination, and retaliation. Thus, there is no cognizable legal theory on which CBS Corporation can be held liable for an alleged violation of the NYSHRL, NYCHRL, or NYLL[15] as it was never Plaintiff's "employer." Plaintiff's claims should, therefore, be dismissed in their entirety against CBS Corporation.[16]

### B.     NYSHRL And NYCHRL Claims Prior To February 14, 2017 Are Untimely.

Plaintiff's NYSHRL and NYCHRL claims fail for the additional reason that they are untimely under the applicable statutes of limitation. Discrimination claims brought under the NYSHRL and the NYCHRL must be commenced within three years of the alleged unlawful discriminatory practice or act. *See* C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8-502(d).

Plaintiff's initial Complaint was filed on February 14, 2020 in the Supreme Court for the State of New York, Bronx County (the "State Court").[17] Thus, any NYSHRL or NYCHRL

---

[15] For the same reasons set forth *supra* in Section IV.B.1, Plaintiff's claim for unpaid overtime fails as a matter of law. Plaintiff admits that she was paid by CBS Radio Inc., not CBS Corporation. FAC ¶ 98; Musiello Aff. at ¶ 14. Regardless, Plaintiff fails to allege sufficient facts to establish a plausible claim for unpaid overtime – she neither alleges how many hours over forty she worked in a given workweek, nor does she allege which workweeks (over a claimed two-year period) she worked overtime. Without these specific facts, she fails to state a cause of action under the NYLL. *See, e.g.*, *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013) (affirming dismissal of NYLL overtime claims where plaintiffs failed to "provide sufficient detail about the length and frequency of their unpaid work").

[16] Because Plaintiff fails to state a claim against CBS Corporation on an individual basis, she cannot serve as a representative for class purposes either. Accordingly, Plaintiff's "disparate impact" and other class claims should also be dismissed in their entirety.

[17] A "corrected" Complaint was filed in State Court on February 18, 2020. Still, even if the Court were to deem February 18 as the Complaint filing date for purposes of the statute of limitations, only claims relating to Plaintiff's

claims arising before February 14, 2017 are time-barred and should be dismissed as a matter of law.  *See, e.g.*, *Anderson v. City of New York, Health & Hosp. Corp.*, No. 16-1051, 2017 WL 9538862, at *21 (S.D.N.Y. Jan. 19, 2017), *report and recommendation adopted sub nom.*, 2017 WL 3251603 (S.D.N.Y. July 31, 2017) (dismissing NYCHRL claims on statute of limitations grounds).  Accordingly, the only timely claim under the NYSHRL and NYCHRL, if any, is with respect to Plaintiff's February 17, 2017 employment termination (her alleged "constructive discharge") from CBS Radio Inc.

## V.   __CONCLUSION__

For all of the foregoing reasons, CBS Corporation respectfully requests that this Court grant its Motion to Dismiss the Complaint in its entirety.

Dated: August 7, 2020          Respectfully submitted,
      New York, New York

                              MORGAN, LEWIS & BOCKIUS LLP

                              __/s  Michael L. Banks__
                              Michael L. Banks (*admitted pro hac vice*)
                              W. John Lee (*admitted pro hac vice*)
                              1701 Market Street
                              Philadelphia, PA 19103
                              Tel.: (215) 963-5000
                              Michael.Banks@morganlewis.com
                              W.John.Lee@morganlewis.com

                              Chelsea L. Conanan
                              Liliya P. Kramer
                              101 Park Avenue
                              New York, NY 10178-0060
                              Tel.:  (212) 309-6000
                              Chelsea.Conanan@morganlewis.com
                              Liliya.Kramer@morganlewis.com

                              *Attorneys for Defendant CBS Corporation*

---

February 17, 2017 termination would be timely.  FAC ¶ 174 (alleging that Plaintiff's employment was terminated as of February 17, 2017).