UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JACQUELYN MUSIELLO and other employees
similarly situated,

                                        Plaintiffs,

                    -v-

CBS CORPORATION, CBS RADIO INC., CBS
SPORTS RADIO NETWORK INC.,
ENTERCOM COMMUNICATIONS CORP.,
DAN TAYLOR, MARGARET MARION, ABC
CORPORATIONS "1-5" and JOHN DOES "1-
10,"

                                        Defendants.

20 Civ. 2569 (PAE)

<u>OPINION & ORDER</u>

---

PAUL A. ENGELMAYER, District Judge:

This case involves claims by a radio station employee of sexual harassment and
discrimination. Jacquelyn Musiello ("Musiello") alleges that, while employed as an accountant
and a payroll and human resources manager for CBS Radio Inc. and CBS Sports Radio Network
(together, "CBS Radio"), she was sexually harassed by Dan Taylor ("Taylor"), a radio host.
Musiello brings claims, on behalf of a putative class, of hostile-work-environment
discrimination, sexual harassment, and disparate-impact discrimination, and individual claims of
retaliation and constructive discharge. Musiello also brings a class claim of a failure to pay
overtime wages. Her claims are brought under state and local law: the New York State Human
Rights Law, N.Y. Exec. Law § 296 *et seq.* ("NYSHRL"), and the New York City Human Rights
Law, N.Y.C. Admin. Code § 8-502(a) *et seq.* ("NYCHRL").

Although all other defendants have answered Musiello's Complaint, one, CBS
Corporation ("CBS Corp."), has moved to dismiss the claims against it. It argues that Musiello

has not viably pled that it was a single employer of Musiello's, alongside her immediate employer, defendant CBS Radio, Inc.  For the following reasons, the Court grants CBS Corp.'s motion to dismiss.

A.    **Factual Background**[1]

1.    **Musiello's Tenure at CBS Radio**

Musiello was employed at CBS Radio between December 10, 2012 and February 17, 2017.  FAC ¶ 8.  She was first hired as a staff accountant for CBS Radio.  *Id.* ¶ 9.  In April 2013, she was moved to CBS Radio's human resources department, where she served as a "Payroll and Human Resources Manager Generalist," although her job title was coded as a "Senior Accountant."  *Id.* ¶¶ 12, 16.  CBS Radio's offices, where she worked, were at 345 Hudson Street, New York, New York.  *Id.* ¶ 9.

Musiello reported to Margaret Marion ("Marion"), CBS Radio's Director of Human Resources, and Randall Friend ("Friend"), CBS Radio's Controller.  *Id.* ¶¶ 12, 61, 65, 125.  As Musiello's supervisor, Marion "was authorized to make decisions that affected the terms and conditions of Musiello's employment."  *Id.* ¶ 63.

As a payroll and human resources manager, Musiello conducted investigations, handled employee complaints, and handled payroll matters for CBS Radio employees.  *Id.* ¶¶ 13–15, 125.  Musiello received complaints about discrimination and wrongful termination from CBS Radio

---

[1] This factual account draws from the First Amended Complaint, Dkt. 40 ("FAC").  *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").  For the purpose of resolving the motion to dismiss under Rule 12(b)(6), the Court presumes all well-pled facts to be true and draws all reasonable inferences in favor of plaintiff.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

employees and knew of related lawsuits and settlements.  *Id.* ¶¶ 67, 125.  In this role, Musiello was charged with applying CBS Corp.'s policies and Business Code of Conduct.  *Id.* ¶¶ 13–14.

On July 27, 2018, *The New Yorker* published an article detailing accounts of six women claiming to have been sexually harassed by Leslie Moonves, CBS Corp.'s then-Chairman and Chief Executive Officer.  *Id.* ¶ 100.  After the article was published, Moonves resigned.  *Id.* Musiello alleges that sexual harassment and discrimination within CBS Corp. extended beyond Moonves, and that CBS Corp. and its subsidiaries allowed breaches of their sexual-harassment policies to occur without consequence.  *Id.* ¶¶ 113–14.  Musiello also alleges that CBS Corp. had a hostile and biased work environment which made it more difficult for her and other female employees to do their jobs, and that CBS Corp. failed to adequately respond to complaints of discrimination.  *Id.* ¶¶ 120–23, 131–41.

Musiello states that she was personally sexually harassed by Dan Taylor, a radio host at CBS Radio.  *Id.* ¶ 147.  She claims that Taylor "solicited her to engage in flirtatious banter," "propositioned [her] for lunch at PJ Clarks," "gifted" her "chocolates, flowers, and sent her a handwritten card."  *Id.* ¶¶ 147–48.  Musiello states that these "inappropriate advances and solicitations" made her feel "uncomfortable, demeaned, and disrespected."  *Id.* ¶ 149.  Musiello further alleges that she received complaints from other female employees who similarly claimed that Taylor had made unwanted sexual advances towards, and sexually harassed, them.  *Id.* ¶¶ 150–52.  Musiello complained to Marion about Taylor's behavior, but Marion did not properly respond.  *Id.* ¶ 152.  Taylor was terminated in 2019 after an investigation related to complaints about his sexism and racism.  *Id.* ¶¶ 57–58.

In December 2015, Musiello injured her foot.  *Id.* ¶ 167.  Musiello's doctor advised her to have surgery; Musiello requested medical leave to do so.  *Id.*  Musiello claims that Marion did

not approve her request for medical leave for almost a year, and that the delay led to serious medical complications.  *Id.* ¶ 168.  Once Musiello was on leave, Taylor emailed her "about her surgery and absence," said "he was 'thinking about [her]," and signed the email "Warmest, Dan."  *Id.* ¶ 172.

After her medical leave ended, Musiello did not return to work.  Musiello alleges that she did not return because she had been "constructively discharged" by virtue of the harassment and hostile work environment she had endured at CBS Radio.  *Id.* ¶ 174.

Finally, Musiello alleges that while employed at CBS Radio she worked more than 40 hours per week from 2015 until she left in February 17, 2017, but was denied overtime wages. *Id.* ¶ 16.  Although Musiello's salary was paid by CBS Radio, not CBS Corp., on at least one occasion in 2015 she was awarded CBS Corp. stock "in compensation for excellent performance."  *Id.* ¶ 98.

### 2. CBS Corporation

CBS Corp. is a global media and entertainment company.  *Id.* ¶ 2.[2]  It is the parent company of a number of wholly owned subsidiaries, two of which used to be CBS Radio Inc. and CBS Sports Radio.  *Id.* ¶ 35.  On September 30, 2016, all of CBS Corp.'s radio businesses were consolidated under CBS Radio Inc.  *Id.* ¶ 36.

Musiello alleges that, at the time of her employment, CBS Corp. and CBS Radio were a "single employer integrated enterprise."  *Id.* ¶¶ 87–99.  In support, Musiello states that all CBS employees were "treated . . . as part of [the] CBS family."  *Id.* ¶ 2.  She adds that all employees at CBS entities "are supervised under CBS Corporation's Human Resources policies, Policy

---

[2] CBS Corp. merged with Viacom Inc. on December 4, 2019, with CBS Corp. continuing as the surviving corporation, which has been renamed "ViacomCBS Inc."  Reply at 1 n.1.  The Court will refer to the surviving corporation as CBS Corp., as the parties have in their papers.

Guide and Business Conduct Statement." *Id.* ¶ 10.  Musiello further alleges that CBS Corp. "had

immediate control over" CBS Radio employees, "had commonality of hiring, firing, discipline, pay,

insurance records and supervision," and that CBS Corp. had "the right to control the means and

manner of the employee's performance." *Id.* ¶ 37.

In February 2017, CBS Corp. split off CBS Radio, which merged with Entercom

Communications Corporation ("Entercom"). *Id.* ¶ 40.  Entercom now owns and operates CBS

Radio Inc. and CBS Sports Radio. *Id.* ¶¶ 51–52.  Musiello claims that "leading up to merger

talks with Entercom," "CBS Corporation was, in fact, involved in the decision making to

terminate Defendant CBS Radio's employees as part of approved layoffs, performance and/or

termination policies of CBS Corporation." *Id.* ¶ 133.

### B.    Procedural History

On February 14, 2020, Musiello filed a class action complaint in New York State

Supreme Court in Manhattan, claiming hostile-work-environment discrimination, sexual

harassment, disparate-impact discrimination, and a failure to pay overtime wages, all on behalf

of herself and similarly situated employees.  As to herself individually, Musiello brought

retaliation and constructive discharge claims.  Dkt. 1, Ex. A ("Compl.") ¶ 1.  Musiello brought

these claims against CBS Corp., CBS Radio Inc., CBS Sports Radio Network Inc., Entercom

Communications Corp., Taylor, Marion, and against a number of unnamed corporations and

John Does, under the NYSHRL and NYCHRL.  Compl. ¶ 3.[3]

---

[3] During the same timeframe, another former CBS Radio Inc. employee, Lauren Lockwood,
represented by the same counsel as Musiello, brought a lawsuit against CBS Corp. in New York
State Supreme Court in Brooklyn making similar allegations.  A sworn affidavit by Musiello was
filed in that case.  On February 27, 2020, States Supreme Court Judge Pamela L. Fisher granted
CBS Corp.'s motion to dismiss Lockwood's case, finding that the facts alleged there were
insufficient "to support that CBS Corporation was a single or joint employer."  Dkt. 20, Ex. A

On March 25, 2020, defendants removed the case to federal court, and the matter was assigned to this Court. Dkt. 1 ("Removal Notice"). Defendants asserted that this Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA"). *See* 28 U.S.C. § 1332(d); Removal Notice.

On April 24, 2020, Musiello moved to remand the case to state court. Dkt. 14. On April 30, 2020, CBS Corp. filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 18. On May 22, 2020, the named defendants collectively filed a memorandum of law in opposition to Musiello's remand motion. Dkt. 29. On May 29, 2020, Musiello filed a reply. Dkt. 31. On June 5, 2020, the Court denied Musiello's motion to remand, finding that the defendants had satisfied CAFA's numerosity requirement, having proffered that, based on human-resources records, the putative class has more than 100 members. Dkt. 33.

Consistent with the briefing schedule the Court set, Dkt. 34, on July 10, 2020, Musiello filed the FAC. On August 7, 2020, CBS Corp. filed a motion to dismiss, Dkt. 41, and a memorandum of law in support, Dkt. 42 ("Def. Mem."). It argues that the FAC does not adequately allege that CBS Corporation exerted control over CBS Radio Inc. such as to make the two entities a "single" or "joint" employer, as required for CBS Corp. to be liable under the NYSHRL and NYCHRL. CBS Corp. also argues that the FAC's claims before February 14, 2017 are untimely, Def. Mem. at 25, and that its claim for overtime wages does not allege sufficient facts to be plausible, *id*. at 6. Also on August 7, 2020, the remaining defendants filed an answer. Dkt. 44. On August 25, 2020, Musiello filed a memorandum in opposition to the

("*Lockwood* Decision"); *Lockwood v. CBS Corp.*, Index No. 514650/2018, (N.Y. Sup. Ct. Feb. 27, 2020.).

motion to dismiss.  Dkt. 49 ("Pl. Opp'n").[4]  On August 28, 2020, CBS Corp. filed a reply.

Dkt. 50 ("Reply").

## II.    Discussion

### A.    Applicable Legal Principles

#### 1.    Legal Standards Governing Motions to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where,

as a matter of law, "the allegations in a complaint, however true, could not raise a claim of

entitlement to relief." *Twombly*, 550 U.S. at 558.  When resolving a motion to dismiss, the Court

must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the

plaintiff." *Koch*, 699 F.3d at 145.  That tenet, however, does not apply to legal conclusions. *See*

*Iqbal*, 556 U.S. at 678.  Pleadings that offer only "labels and conclusions" or "a formulaic

recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

---

[4] In connection with her opposition, Musiello filed an affidavit from Beth Epstein, a former employee of CBS Radio, although the FAC did not mention either Epstein or her affidavit. Dkt. 46.  The Court will not consider this affidavit in ruling on the motion to dismiss.  *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (when extrinsic materials, which are neither attached to the complaint nor incorporated by reference, are submitted or consideration in connection with a 12(b)(6) motion, the Court must either not consider them or convert the motion to one for  summary judgment); *Semeraro v. Woodner Co.*, No. 17 Civ. 8535 (ER), 2018 WL 3222542, at *4 (S.D.N.Y. July 2, 2018) ("[I]n ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court generally must confine itself to the four corners of the complaint and look only to the allegations contained therein.").

### 2.   Gender Discrimination and Sexual Harassment

The NYSHRL and NYCHRL both make it unlawful for an "employer," on the basis of an individual's sex, to "refuse to hire or employ or to bar or to discharge from employment such individual [or person]; or to discriminate against such individual [or person] in compensation or in terms, conditions or privileges of employment."  N.Y. Exec. Law § 296(1)(a); N.Y.C. Admin. Code § 8-107(1)(a).

Sexual-harassment claims brought under a hostile-work-environment theory under the NYSHRL are judged by the same standard as their federal counterparts in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. *Summa v. Hofstra Univ.*, 708 F.3d 115, 123–24 (2d Cir. 2013).  "To establish a hostile work environment . . . , a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Littlejohn v. City of New York*, 795 F.3d 297, 320–21 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

The NYCHRL's standards for liability for sexual harassment are more permissive than the NYSHRL's.[5]  *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).  Unlike the NYSHRL, the NYCHRL does not require a plaintiff claiming sexual harassment to prove that the conduct was severe and pervasive, requiring only that the plaintiff demonstrate that she was subjected to "unwanted gender-based conduct."  *Erasmus v. Deutsche Bank Ams. Holding Corp.*, No. 15 Civ. 1398 (PAE), 2015 WL 7736554, at *7 (S.D.N.Y.

---

[5] In August 2019, the NYSHRL was amended to broaden its liability standards governing conduct after its effective date.  That amendment, however, does not apply here, as the conduct alleged by Musiello pre-dated the amendment. *See McHenry v. Fox News Network, LLC*, No. 19 Civ. 11294 (PAE), 2020 WL 7480622, at *6 n.4 (S.D.N.Y. Dec. 18, 2020).

Nov. 30, 2015) (quoting *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 76 (1st Dep't 2009)). The plaintiff "need only demonstrate 'by a preponderance of the evidence that she has been treated less well than other employees because of her gender.'" *Mihalik*, 715 F.3d at 110 (quoting *Williams*, 61 A.D.3d at 76).

### 3.    Single Employer Liability[6]

An essential element of a claim under the NYSHRL or NYCHRL is the existence of an "employer-employee relationship." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014) (employment relationship required to sustain a Title VII and analogous NYSHRL claims); *see Ruiz v. New Avon LLC*, No. 18 Civ. 9033 (VSB), 2019 WL 4601847, at *12 (S.D.N.Y. Sept. 22, 2019) (employment relationship required to sustain claims under NYSHRL and NYCHRL); *Weerahandi v. Am. Statistical Ass'n*, No. 14 Civ. 7688 (AT), 2015 WL 5821634, at *7 (S.D.N.Y. Sept. 30, 2015) ("[T]he NYSHRL and the NYCHRL prohibit discriminatory conduct directed at current or prospective employees, and thus does not include bias directed at third parties not in an employment relationship with the allegedly offending employer." (quotation and citation omitted)).  For a claim under the NYSHRL or the NYCHRL to be viable, the defendant entity must have employed the plaintiff.  *See Hargett v. Metro. Transit Auth.*, 552 F. Supp. 2d 393, 405 (S.D.N.Y. 2008) (noting that "under the pertinent provisions of [NYSHRL], it is unlawful for *an*

---

[6] The FAC indicates that it alternatively alleges a "joint employer" theory of liability, and CBS Corp. argued in its motion to dismiss that that allegation was not plausibly pled.  Musiello's opposition to the motion to dismiss did not respond as to the "joint employer" theory of liability. That argument is thus abandoned.  *See Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08 Civ. 442 (TPG), 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim.").

*employer* to discharge an employee" for an impermissible reason); *Hellstrom v. Aramark Am. Food Servs., Inc.*, 926 N.Y.S.2d 344 (Sup. Ct. 2011) (noting the parallel for the NYCHRL).

Where, as here, a plaintiff does not argue that she was a direct employee of a parent company or that she was jointly employed by the parent company and the corporate subsidiary that was her direct employer, "a parent company is considered an 'employer' of its subsidiary's employees only when the parent and subsidiary represent a single, integrated enterprise." *Shukla v. Viacom Inc.*, No. 18 Civ. 3522 (PAE), 2019 WL 1932568, at *6 (S.D.N.Y. May 1, 2019). Here, indeed, the FAC alleges that CBS Corporation exerted control over CBS Radio Inc. so as make the two entities part of a "single" employer.  FAC ¶ 4.

The Second Circuit has adopted a four-part test to gauge whether a parent and subsidiary were a single employer.  It examines evidence of "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control."  *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995) (citation and quotation omitted); *see id.* (a "parent and subsidiary cannot be found to represent a single, integrated enterprise in the absence of evidence" of one or more of the four factors) (quotation and citation omitted).  Of these factors, the most "critical" is the second: centralized control of labor.  *Id.* at 1240–41.  As to it, the Second Circuit has stated that "the critical question to be answered then is:  What entity made the final decisions regarding employment matters related to the person claiming discrimination?"  *Id.* (quoting *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983)); *see Brown*, 756 F.3d at 227 (control of labor relations is the central concern).

At the pleading stage, a complaint need not plead that the parent exercises "total control" over hiring decisions, as long as it pleads facts supporting a reasonable inference that there is "an amount of participation [by the parent] that is sufficient and necessary to the total employment

process." *Brown*, 756 F.3d at 227 (alteration in original) (quoting *Cook*, 69 F.3d at 1241).  But a complaint must "do more than simply state legal conclusions and recite the elements of the 'single employer' standard to survive a motion to dismiss."  *Fried v. LVI Servs., Inc.*, No. 10 Civ. 9308 (JSR), 2011 WL 2119748, at *5 (S.D.N.Y. May 23, 2011).  It must still plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (quotations omitted).  "[C]onclusory, *ipse dixit* assertions" about the degree of control the parent exercised over the subsidiary do not satisfy the pleading standards as articulated in *Twombly* and *Iqbal*.  *Fried*, 2011 WL 2119748, at *5.

### B.    CBS Corporation Is Not a Single Employer with CBS Radio

The FAC here falls well short of this standard.

#### 1.    Centralized Control of Labor Relations

As to this most important factor for single-employer liability, the FAC does not plead sufficient facts to support that CBS Corp. and CBS Radio constituted a single employer.  "[T]he fact that [CBS] Corp. is the parent of [CBS Radio] does not itself evidence control of labor relations, for treating that fact as dispositive would vitiate the purpose of the single-employer inquiry."  *McHenry*, 2020 WL 7480622, at *19.  "Nor does the 'naked assertion' that an employee, in this case [Musiello], worked for the parent as well as the subsidiary suffice."  *Id.*

To satisfy this factor, Musiello was instead required to allege facts that would support a reasonable inference that CBS Corp. participated in final decisions regarding her employment process.  The FAC does not do so.[7]  Instead, in attempting to allege that CBS Corp. and its

---

[7] Indeed, for much the same reasons as set out here, the *Lockwood* court granted CBS Corp.'s motion to dismiss the complaint there, which similarly alleged that "CBS Corporation owned, controlled and supervised the activities and operation of its wholly owned subsidiaries and approved CBS Radio's discipline and/or termination of their employees."  *Lockwood* Decision at 7 (quotations omitted).  The *Lockwood* court held that those allegations were "conclusory and lack factual specificity."  *Id.*

former subsidiary CBS Radio were a single employer, the FAC tries to meld the two together, by

using the term "CBS" throughout the complaint to refer to the two together, including in relation

to acts specifically alleged against CBS Radio only.  *See, e.g.*, FAC ¶ 2.  But this lumping of the

two entities together, without tying allegations bearing on control over employees to CBS Corp.,

does not satisfy Musiello's burden to set forth specific facts as to how CBS Corporation actually

exercised control over CBS Radio's employees—and Musiello in particular.  *See Lawrence v.*

*Int'l Bus. Mach. Corp.*, No. 12 Civ. 8433 (DLC), 2017 WL 3278917, at *6 (S.D.N.Y. Aug. 1,

2017) ("[G]roup pleading will not suffice to hold a parent corporation liable under either the

joint employer or single employer doctrines.").

As to the limited allegations that Musiello makes about CBS Corp. specifically, most are

highly conclusory.  *See* FAC ¶ 37 ("At all relevant times, Defendant CBS Corporation had

immediate control over its subsidiary, CBS Radio Inc.'s employees; had commonality of hiring,

firing, discipline, pay, insurance records and supervision and the right to control the means and

manner of the employee's performance through its enforcement of CBS Corporation's own

policies and procedures that governed Defendant CBS Radio Inc.'s employees."), *id*. ¶ 84 ("At

relevant times, Defendant CBS Corporation, by its agents, servants and/or employees owned,

controlled and supervised the activities and operation of its wholly owned subsidiaries, including

Defendants CBS Radio Inc. and CBS Sports Radio, and their employees."), *id*. ¶ 85 ("At all

relevant times, Defendant CBS Corporation, by its agents, servants and/or employees owned,

governed, managed and approved the acts and business of its wholly owned subsidiaries,

including Defendants CBS Radio Inc. and CBS Sports Radio, and their employees."), *id*. ¶¶ 113–14

(claiming that CBS Corporation perpetuated a "top down sexist culture").  These too do not set

out specific facts, as required to create a reasonable inference of CBS Corp.'s control over CBS

Radio's labor relations.  *See Fried*, 2011 WL 2119748, at \*5.  And Musiello's opposition to the motion to dismiss does not help her cause, as it makes its own conclusory claims to this effect, often without even citing the FAC.  *See* Pl. Opp'n at 14 ("All critical decisions were referred for approval to CBS Corporation's Human Resources and Finance Departments.").

The limited specific facts that the FAC alleges that bear on control over employment decisions, particularly as to Musiello, demonstrate CBS Radio's control, and that it made the "final decisions regarding employment matters related to" Musiello, *Cook*, 69 F.3d at 1240, but do not situate such control or decision-making with any CBS Corp. employee.  The closest that the FAC comes is to allege that at the time of the Entercom merger, CBS Corp. communicated with CBS Radio regarding terminations of CBS Radio employees.  *See* FAC ¶ 134; Pl. Opp'n at 13.  But the FAC does not allege those communications had anything to do with Musiello's employment.  *See Kilkenny v. Greenberg Traurig, LLP*, No. 05 Civ. 6578 (NRB), 2006 WL 1096830, at \*4 (S.D.N.Y. Apr. 26, 2006) (allegations insufficient where "plaintiff d[id] not provide any supported allegations that [the putative employer] exerted actual control over his hiring, firing, discipline, pay, or supervision").  In contrast, the FAC does allege that Marion and Taylor, the two individuals whom Musiello accuses of harassing, discriminating, and retaliating against her, *see* FAC ¶¶ 78, 125, 127, 162–63, 168, had control over her employment, *see id*. ¶¶ 59, 63.  But neither is alleged to have been a CBS Corp. employee.  And the FAC's allegation that "Marion ha[d] regular contact . . . with CBS Executives and obtain[ed] guidance and/or approval from CBS Executives regarding . . . decisions that directly affected CBS Radio employees," *id*. ¶ 131, is conclusory.  It does not demonstrate, at all, that CBS Corp. had control over the hiring, discipline, or supervision of Musiello herself.  *See Benzinger v. Lukoil Pan Ams., LLC*, 447 F. Supp. 3d 99, 135 (S.D.N.Y. 2020) ("[E]mployees of each business 'can maintain

some amount of communication with senior employees' of the other 'without collapsing corporate formalities.'" (quoting *Fenner v. News Corp.*, No. 09 Civ. 09832 (LGS), 2013 WL 6244156, at *9 (S.D.N.Y. Dec. 2, 2013))).

Finally, unequal to the challenge are the FAC's allegations that CBS Corp. "promulgated, drafted and approved" human-resources and other policies for its subsidiaries and also monitored their compliance with such policies. FAC ¶¶ 87, 89. These general pronouncements do not say anything about whether these policies were enforced within CBS Radio, let alone in connection with Musiello's employment, or that CBS Corp. had any say in the application of general policy as to her. *See Fenner*, 2013 WL 6244156, at *10 (where the subsidiary adopted the parent's policies, including "Standards of Business Conduct," but "[t]he record does not reflect that [the parent] enforced these policies at the [subsidy]," the record "is insufficient to show that [the parent] exercised centralized control over the [subsidy's] employees"); *id.* ("[T]he mere fact that [Plaintiff] agreed to be bound by certain standards of conduct set forth by [the parent's policies] does not indicate that [the parent company] exercised control over or made final decisions regarding the employment of [Plaintiff]." (alterations in original) (quoting *Snyder v. Advest, Inc.*, No. 06 Civ. 1426 (RMB), 2008 WL 4571502, at *7 (S.D.N.Y. June 8, 2008))); *Woodell v. United Way of Dutchess Cnty.*, 357 F. Supp. 2d 761, 769 (S.D.N.Y. 2005) ("The fact that [the parent] . . . offers general policy statements or guidelines on employment matters is not sufficient evidence to establish centralized control."); *see also Saleh v. Pretty Girl, Inc.*, No. 09 Civ. 1769 (ENV), 2012 WL 4511372, at *11 (E.D.N.Y. Sept. 28, 2012) (key issue is whether the parent company enforced the policies).[8] And the FAC's claim that the CBS Policy Guide required

---

[8] In dismissing similar claims by Musiello's co-worker in *Lockwood*, the New York State Supreme Court similarly found that such allegations as to CBS's policies did not support that CBS Corp. was "a single or joint employer" of the plaintiff. *See Lockwood* Decision at 8.

approval by "Human Resources and CBS Compensation" of all decisions regarding employee "titles or salaries" and by "Human Resources" of all "discipline and termination," FAC ¶¶ 91–92, fails, too, both because the FAC does not specifically allege that it was CBS Corp.'s human-resources department that played these roles as opposed to that of CBS Radio, and because the FAC does not allege any connection between these policies and employment decisions affecting Musiello.

For these reasons, the FAC does not satisfy the most important factor bearing on a single-employer claim: that CBS Corp. had control over the hiring, discipline, or supervision of CBS Radio employees in general, and plaintiff Musiello in particular.

### 2. The Other *Cook* Factors

The FAC does contain a few concrete allegations as to the first single-employer factor, the "interrelation of operations." It alleges that Musiello "received a personal identification number to access her employee account with CBS Corporation" at www.CBSANDYOU.com, and was given "email addresses at both CBS.com and CBSradio.com." FAC ¶¶ 10–11; Pl. Opp'n at 5. And it alleges that CBS Corp. and CBS Radio had an integrated software system for internal communications and payroll systems, which enabled CBS Corp. "to view, monitor and/or adjust the payroll records for CBS Radio." FAC ¶ 94. As to the third and fourth *Cook* factors, "common management" and "common ownership or financial control," *Cook*, 69 F.3d at 1240, as Musiello states, CBS Radio was a wholly owned subsidiary of CBS Corporation and there were unidentified "executives whose duties overlapped between CBS Corporation and CBS Radio." Pl. Opp'n at 15. As to those factors, however, the FAC does not otherwise recite supporting facts.

Nonetheless, even if these factual allegations were treated as sufficient to satisfy these three *Cook* factors, they would not carry the day for Musiello. Such features (*e.g.*, overlapping email systems and personnel) are familiar if not routine in the context of a parent-subsidiary corporate relationship. But such, as the case law reflects, does not inherently bespeak a single-employer arrangement. *See, e.g.*, *McHenry*, 2020 WL 7480622, at *20 ("[T]he fact of a parent-subsidiary relationship does not establish that the two functioned as an employee's single employer," and the fact that the subsidies' executives report to that of the parent, or that they share high level officers, is not enough to "support finding a single-employer arrangement[.]"); *Brathwaite v. Sec. Indus. Automation Corp.*, No. 06 Civ. 300 (ERK), 2006 WL 8439237, at *4 (E.D.N.Y. Dec. 1, 2006) ("[T]he existence of a parent-subsidiary relationship is insufficient on its own to support a finding that the two entities are a single or joint employer for purposes of Title VII."); *Lora v. Centralized Mgmt. Serv., Inc.*, No. 18 Civ. 4253 (NSR), 2020 WL 3173025, at *5 (S.D.N.Y. June 12, 2020) (finding that where, "[a]side from her naked assertion that she worked as an Executive/Administrative Assistant for all Defendants, . . . Plaintiff's only allegation that remotely supports a connection . . . is that the entities share a common address, . . . this lone assertion is simply not enough for the Court to" find support for liability under a single-employer theory).

And where the pleadings are devoid of facts supporting the existence of the second factor—control of employment decisions, including as to the plaintiff—a single-employer relationship does not exist, as the assembled case law reflects. *See Brown*, 756 F.3d at 227 (stating that "centralized control over labor relations" is "the most important prong in the four-part test"); *Adams-Flores v. City of New York*, No. 18 Civ. 12150 (JMF), 2020 WL 996421, at *4 (S.D.N.Y. Mar. 2, 2020) (citing *Cook* as "identifying centralized control as a critical factor under

the single employer doctrine"); *Fried*, 2011 WL 2119748, at *3 ("Courts applying this four-part standard in discrimination cases have especially focused on the second factor: centralized control of labor relations."); *Da Silva v. Kinsho Int'l Corp.*, 210 F. Supp. 2d 241, 244 (S.D.N.Y.), *aff'd*, 229 F.3d 358 (2d Cir. 2000) ("Courts applying [*Cook*'s] four-part test 'have focused on the second factor: centralized control of labor relations.'" (quoting *Cook*, 69 F.3d at 1240)); *Bragg v. Emmis Broad. Corp.*, No. 95 Civ. 10310 (DAB), 1998 WL 730339, at *6 (S.D.N.Y. Oct. 19, 1998) ("The existence of centralized control of labor relations is the most crucial factor of the test."); *Duffy v. Drake Beam Morin*, No. 96 Civ. 5606 (MBM), 1998 WL 252063, at *4 (S.D.N.Y. May 19, 1998) ("Although each of these factors is important, the second one— centralized control of labor relations—should be the focus of the inquiry.").

Accordingly, the Court holds that the FAC fails to plead sufficient facts supporting the inference that CBS Corp. and Musiello had an "employer-employee relationship," *Brown*, 756 F.3d at 22, and therefore dismisses its claims under NYSHRL and NYCHRL against CBS Corp. *See Fried*, 2011 WL 2119748, at *5–6 (dismissing discrimination claims against parent where allegations that parent and subsidiary acted as single employer were inadequate to allege parent's control over subsidiary's labor relations).[9] It follows that, to the extent Musiello seeks to pursue class claims on behalf of employees of CBS Corp., she cannot do so, and this aspect of her putative class claims too is dismissed.

## C.    Overtime Claims

Musiello also claims that CBS Corp. is liable for failing to pay her, and the other members of the class she claims to represent, overtime wages.  FAC ¶¶ 255–258.  She brings

---

[9] In light of this holding, the Court has no occasion to reach CBC Corp.'s  argument that Musiello's NYSHRL and NYCHRL claims against it for conducting pre-dating February 14, 2017 are time-barred.  *See* Def. Mem. at 25–26.

these claims under "various federal, state, and/or local statutes and/or regulations, including, but not limited to, New York State Labor Laws, and in particular, N.Y.L.L §§ 190 and 160."  FAC ¶ 256.

These claims fail for two reasons.  First, these statutes impose wage obligations only on employers. *See Zubair v. EnTech Eng'g P.C.*, 808 F. Supp. 2d 592, 600 (S.D.N.Y. 2011) (explaining that the New York State Labor Law imposes obligations on "employers"); *Davis v. Lenox Hill Hosp.*, No. 03 Civ. 3746 (DLC), 2004 WL 1926087, at *5 (S.D.N.Y. Aug. 31, 2004) (stating that New York Labor Laws imposes the overtime requirement on employers).  And, for the reasons above, the FAC does not adequately plead that CBS Corp. was an employer of Musiello's.

Second, the FAC's overtime claims are insufficiently specific.  It alleges only that: "In the course of performing her duties, Plaintiff Musiello worked more than 40 hours per week beginning in or about 2015 and continuing until her separation February 17, 2017.  Despite qualifying, Plaintiff Musiello was denied overtime wages."  FAC ¶ 16.  But, as the Second Circuit has repeatedly emphasized, a generalized claim of a failure to pay overtime, unaccompanied by any allegation as to what specific workweek the plaintiff worked overtime, or by how many hours for any specific workweek is insufficient.  *See Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013) ("To plead a plausible FLSA overtime claim, Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week."); *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) ("[W]e find no plausible claim that FLSA was violated, because Plaintiffs have not alleged

a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours.").

The Court therefore dismisses Musiello's unpaid overtime claim for failure to state a claim.  Because the second infirmity in this overtime claim is not limited to Musiello's overtime claims against CBS Corp., the Court dismisses such claims against all defendants, including CBS Radio.

## CONCLUSION

For the foregoing reasons, the Court grants CBS Corp.'s motion to dismiss in its entirety, and further dismisses Musiello's overtime claims in their entirety.  The Clerk of Court is respectfully directed to terminate the motions pending at dockets 18 and 41, and to terminate CBS Corp. as a defendant in this case.

The Court schedules an initial pretrial conference with counsel for the answering defendants for March 3, 2021 at 3:00 p.m.  This conference will be held telephonically.  Counsel are directed to review the Court's Emergency Individual Rules and Practices in Light of COVID-19, found at https://nysd.uscourts.gov/hon-paul-engelmayer, for the Court's procedures for telephonic conferences.  Counsel are further directed to prepare a Civil Case Management Plan and joint letter in accordance with the Court's Individual Rules, to be submitted to the Court no later than February 26, 2021.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: February 11, 2021
      New York, New York